The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Kenneth B. TOTTENHOFF,
Defendant-Appellee.

No. 84SA311.

Supreme Court of Colorado,
En Banc.

Dec. 10, 1984.

Stanley C. Peek, Dist. Atty., H. Lee Schmidt, Chief Deputy Dist. Atty., Greeley, for plaintiff-appellant.

Howard M. Mullen, Denver, for defendant-appellee.

QUINN, Justice:

The People, pursuant to C.A.R. 4.1, appeal from an order suppressing cocaine and money seized from the defendant, Kenneth B. Tottenhoff, after a police officer had stopped and purportedly arrested him for reckless driving. The district court held that the seizure of these items was unlawful because the defendant had not yet been arrested prior to the seizure. We reverse the order of suppression.

On March 14, 1984, Officer John Mitchell of the Colorado State Patrol, after clocking the defendant's vehicle at 95 miles per hour in a 55 mile zone on Interstate Highway 25 in Weld County, Colorado, and observing it following closely behind another automobile, stopped the defendant for reckless

driving[1] and following too closely.[2] After the defendant pulled his vehicle over to the shoulder of the highway, the officer stepped out of his vehicle and was met midway between the vehicles by the defendant. The defendant's car had Wyoming license plates on it, and the defendant presented the officer with a Wyoming driver's license and registration. The officer's usual practice in cases of speeding in excess of 75 miles per hour by nonresident motorists licensed by a state not a party to the Nonresident Violator Compact, §§ 24–60–2101 to –2104, 10 C.R.S. (1973), was to take the motorist to the nearest county jail for booking and bonding procedures.[3] Because Wyoming is not a member of the Nonresident Violator Compact, the officer intended to take the defendant to the Weld County Jail where he would be thoroughly searched, transferred to the custody of the sheriff, and then permitted to post bond. The officer accordingly told the defendant that "You're being stopped for driving 95 miles an hour, reckless driving, and tailgating, and you're now under arrest."

After directing the defendant to the patrol car, the officer performed a cursory patdown search and removed a bronze torchhead, normally used on a propane torch, which was protruding from the defendant's rear pocket. While the defendant was seated in the rear seat of the patrol car, the officer noticed large bulges in the lower left and right pockets of the defendant's jacket. The officer informed the defendant at this time that he could either arrange to have his car towed to the jail, could leave his car at the scene and acknowledge in writing that he would assume responsibility for removing it within 24 hours, or could follow the officer in his own vehicle to the jail.

The officer then ordered the defendant to step out of the patrol vehicle while the officer checked the defendant's vehicle for weapons. After finding no weapon in the vehicle, the officer decided to search the defendant. He first reached into one pocket of the defendant's jacket and removed a bundle of currency and then placed it back in the jacket. When the officer next reached into the other pocket of the defendant's jacket, the defendant attempted to push away. Upon being asked by the officer "What's in the pocket?", the defendant responded "More cash." When the officer told the defendant to remove the cash, the defendant reached with his hand into his pocket and, after extending a closed hand to the officer, opened his hand, which had nothing in it, and started laughing. As the defendant began to reach again into his pocket, the officer grabbed the defendant's hand and pulled out a brown paper sack from the pocket. Upon looking into the sack, the officer observed a clear plastic bag containing a substantial amount of suspected cocaine. At this point the officer seized the suspected cocaine, removed the roll of cash from the defendant's pocket, handcuffed the defendant, and searched his vehicle before arranging for its towing. The defendant was taken to the county jail and was subsequently charged with possession of a schedule II controlled substance,[4] conspiracy to possess and distribute a schedule II controlled substance,[5] and reckless driving.[6]

▪ In suppressing the cocaine and money seized from the defendant, the dis-

---

1. § 42–4–1203, 17 C.R.S. (1984).

2. § 42–4–908, 17 C.R.S. (1984).

3. The purpose of the Nonresident Violators Compact is to permit those nonresident motorists who possess a driver's license issued by a state that is a party to the compact to be served with a traffic citation for certain violations and to proceed on their way without further delay rather than, as is often the case, to be required to post bond in order to ensure their appearance at trial or to remain in custody pending trial on the traffic offenses. § 24–60–2101, Article I, 10 C.R.S. (1984).

4. § 18–18–105(1)(a), (2)(a)(I), 8 C.R.S. (1984 Supp.); § 12–22–310(1)(a)(V), 5 C.R.S. (1984 Supp.).

5. § 18–2–201, 8 C.R.S. (1978); § 18–18–105(1)(a), (2)(a)(I), 8 C.R.S. (1984 Supp); § 12–22–310(1)(a)(V), 5 C.R.S. (1984 Supp.).

6. § 42–4–1203, 17 C.R.S. (1984).

trict court ruled, in pertinent part, as follows: that no arrest occurred until the officer actually placed handcuffs on the defendant; that the seizure of the cocaine and money, which occurred prior to this handcuffing, was not incident to a patdown search for weapons; and that the seizure of the cocaine and money, not being incident to a custodial arrest, was the result of an unconstitutional search. The People claim that the seizure of the suspected cocaine and cash from the defendant's person was justified as a seizure made in the course of a search incident to a valid arrest. We agree with the People's claim. A review of the suppression testimony under the "reasonable person" standard of arrest clearly shows that the defendant was validly placed under arrest prior to the officer's seizure of the cocaine and money, and, therefore, the seizure of these items was incident to a lawful arrest.[7]

■ Probable cause, which is the touchstone of a valid warrantless arrest, exists when the facts and circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed by the person about to be arrested. *E.g., Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *People v. Rueda,* 649 P.2d 1106 (Colo.1982); *People v. Navran,* 174 Colo. 222, 483 P.2d 228 (1971). Al-

though an arrest constitutes a "seizure" of the person within the constitutional sense of that term, not all forms of "seizure" are necessarily arrests. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Limited forms of intrusion, such as an investigatory stop, have been upheld on less than probable cause when, for example, a police officer has a reasonable and articulable basis in fact for suspecting that criminal activity has occurred, is occurring, or is about to take place. *E.g., Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *People v. Lewis,* 659 P.2d 676 (Colo.1983); *People v. Tate,* 657 P.2d 955 (Colo.1983); *Stone v. People,* 174 Colo. 504, 485 P.2d 495 (1971).

■ The difference between a limited seizure of the person and an arrest is the duration and degree of intrusion resulting from the interference with the person's freedom of movement. *See, e.g., People v. Hazelhurst,* 662 P.2d 1081 (Colo.1983); *People v. Schreyer,* 640 P.2d 1147 (Colo. 1982); *People v. Tooker,* 198 Colo. 496, 601 P.2d 1388 (1979). Because a limited seizure of the person is authorized on a standard less than that of probable cause, it must be brief in duration, limited in scope, and narrow in purpose. *E.g., Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Hazelhurst,* 662 P.2d 1081; *Schreyer,* 640 P.2d 1147. An arrest based upon probable cause, in contrast, usually results in the officer's taking the person arrested to the station-

---

7. After handcuffing the defendant and removing the roll of currency from the defendant's pocket, the officer searched the passenger compartment of the defendant's vehicle and seized therefrom a plastic bag containing suspected drugs and a glass "bong," believed by the officer to be an item associated with drug use. Because the district court's suppression ruling addressed only the seizure of the cocaine and money from the defendant's person and not the seizure of the items from the passenger compartment of the defendant's automobile, the propriety of the officer's seizure of these items from the passenger compartment of the defendant's automobile is not an issue on this appeal. We note, however, that when a person has been stopped while operating a motor vehicle and thereafter arrested in or about the vehicle, the arresting officer may search the passenger compartment of the automobile as incident to the arrest. *New York v. Belton,* 453 U.S. 454, 101

S.Ct. 2860, 69 L.Ed.2d 768 (1981). A search of the entire vehicle may also be justified if there is independent probable cause to believe the vehicle contains contraband or evidence of criminal activity. *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *People v. Velasquez,* 641 P.2d 943 (Colo.1982), *cert. denied* 459 U.S. 805, 103 S.Ct. 28, 74 L.Ed.2d 43 (1982), *reh'g denied* 459 U.S. ·1138, 103 S.Ct. 774, 74 L.Ed.2d 986 (1983). Finally, the arrest of a motorist also authorizes the arresting officer, under appropriate circumstances, to make an inventory of the contents of the vehicle incident to the caretaking function of the police prior to arranging for the impoundment of the vehicle. *See, e.g., South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *People v. Counterman,* 192 Colo. 152, 556 P.2d 481 (1976).

house for booking procedures and the filing of criminal charges. *Dunaway v. New York*, 442 U.S. 200, 212–13, 99 S.Ct. 2248, 2256–57, 60 L.Ed.2d 824 (1979); *Terry*, 392 U.S. at 26, 88 S.Ct. at 1882. Whether a person has been seized for constitutional purposes must be determined not on the basis of the officer's subjective state of mind but by an objective "reasonable person" standard. Under this standard a court must assess the totality of circumstances surrounding the officer's encounter with the person and determine whether, in view of these circumstances, a reasonable person in that situation would have believed that he was not free to leave the scene. *E.g., Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (plurality opinion); *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (plurality opinion); *People v. Pancoast*, 659 P.2d 1348 (Colo.1982).[8]

 We believe this same "reasonable person" standard should also control the issue of whether a particular form of intrusion constitutes an arrest. Thus, if under the totality of circumstances a reasonable person in the situation of the defendant would have believed that he was being arrested, rather than merely temporarily detained for a brief investigation, an arrest has occurred which must be supported by probable cause. *E.g., United States v. Johnson*, 626 F.2d 753 (9th Cir. 1980), *aff'd* on other grounds, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982); *United States v. Tucker*, 610 F.2d 1007 (2d Cir.1979); *State v. Ostroski*, 186 Conn. 287, 440 A.2d 984 (1982), *cert. denied* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982); *People v. Reynolds*, 94 Ill.2d 160, 68 Ill. Dec. 122, 445 N.E.2d 766 (1983); *State v. Frazier*, 421 A.2d 546 (R.I.1980). Because an arrest based on probable cause is a reasonable constitutional intrusion, a full search of the person arrested is *per se* reasonable and requires no additional justification. *Gustafson v. Florida*, 414 U.S.

260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *People v. Traubert*, 199 Colo. 322, 608 P.2d 342 (1980).

In this case the evidence is undisputed that Officer Mitchell had probable cause to arrest the defendant for reckless driving and following too closely, both of which are class II traffic offenses punishable by ten to ninety days' imprisonment, a $10 to $300 fine, or both a fine and imprisonment. §§ 42–4–1203, 42–4–908, 42–4–1501(2)(a)(II), 17 C.R.S. (1984). Since the defendant was driving with a license and registration issued by the state of Wyoming, which was not a party to the Nonresident Violator Compact, the officer intended from the outset of his encounter with the defendant to follow his usual practice of arresting the driver and proceeding to the nearest county jail for booking and bonding procedures preliminary to the filing of formal criminal charges. This intent was made known to the defendant when the officer, immediately after checking the defendant's driver's license and registration, said "you're now under arrest." The officer made the decision not to initially handcuff the defendant because, up to that point in time, he had no reason to fear for his own safety and intended to offer the defendant the choice either to follow him to the Weld County Jail in his own car or to be transported to jail in the officer's vehicle. Under either alternative, however, the defendant was clearly not free to depart and pursue his own affairs, but instead was required to submit to booking and bonding procedures at the jail and to remain there until such time as he posted bond.

 The type of intrusion involved here is totally inconsistent with the limited type of interference characteristic of an investigatory stop. A reasonable person in the situation of the defendant would neces-

---

**8.** We recently noted in *Pancoast* that pertinent factors for the court to consider in applying the "reasonable person" standard include "the words used by the officer, his tone of voice and

general demeanor in requesting the defendant to accompany him to the police station." 659 P.2d 1348, 1351 (Colo.1982).

sarily believe that he was being placed under arrest and would remain in custody until such time as he posted bond. *E.g., Reynolds,* 94 Ill.2d 160, 68 Ill.Dec. 122, 445 N.E.2d 776 (under "reasonable person" test, defendant was under arrest when police officer, after making radio check and learning that station wagon and trailer being operated by defendant did not belong to him, told defendant to follow him in station wagon to police station); *People v. Emanuel,* 98 Mich.App. 163, 295 N.W.2d 875 (1980), *cert. denied* 459 U.S. 1220, 103 S.Ct. 1226, 75 L.Ed.2d 461 (1983) (although defendant was given option of driving his own car to the police station, he was nonetheless arrested because, never having been told that his appearance was voluntary or that he was free to go, he would obviously have been restrained if he refused to go to the station or had tried to escape).

 Because the defendant's arrest was based on probable cause to believe that he committed the traffic offenses of reckless driving and following too closely, the officer was entitled to subject the defendant to a full search of his person incident to that arrest. This search required no independent justification, such as a reasonable suspicion or belief that the defendant might be armed or in possession of contraband. *Gustafson,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456; *Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Traubert,* 199 Colo. at 326–27, 608 P.2d 342. In conducting this search the officer was authorized to seize from the defendant's person any articles which the officer reasonably believed to be related to criminal conduct, even though these articles did not directly bear on the traffic offenses for which the defendant was initially arrested. *Robinson,* 414 U.S. at 236, 94 S.Ct. at 477; *Traubert,* 199 Colo. 322, 608 P.2d at 345; *People v. Ortega,* 181 Colo. 223, 229, 508 P.2d 784, 788 (1973). Thus, the seizure of the cocaine and the roll of money from the defendant's person, being incident to a valid arrest based on probable cause, comported with established constitutional principles.

The order of suppression is accordingly reversed.