The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Howard James BOFF, Defendant–Appellee.

No. 88SA58.

Supreme Court of Colorado, En Banc.

Dec. 19, 1988.

Dean J. Johnson, Dist. Atty., Jeffrey D. Easley, Deputy Dist. Atty., Cortez, for plaintiff-appellant.

Fossum, Hatter & Green, P.C., Michael F. Green, Cortez, for defendant-appellee.

VOLLACK, Justice.

Pursuant to C.A.R. 4.1, the People challenge a ruling of the district court suppressing marijuana found in a backpack worn by Howard James Boff. We conclude from the totality of the circumstances that the search of the backpack was incident to a lawful custodial arrest, and therefore reverse the order of the district court.

## I.

Boff was arrested on July 30, 1987, after a police surveillance team spotted him watering marijuana plants in a remote, unpopulated canyon in Dolores County, Colorado. Two police officers were involved in Boff's arrest. The first police officer observed a man later identified as Boff watering marijuana plants. He saw the man leave the canyon wearing a blue backpack. He transmitted to the police dispatcher that the subject was leaving the canyon and that he was in pursuit on foot. Boff left the canyon on a motorcycle. The second police officer stopped Boff on a deserted road about ten minutes later. He asked Boff to turn off the motorcycle engine so they could converse quietly, showed his badge to Boff, and asked him to wait for another police officer who would be arriving shortly. The first police officer arrived about five minutes later. The first police officer identified Boff as the person he had seen watering the marijuana plants. He testified that when he caught up with Boff, the backpack was lying on the ground next to the motorcycle. From the testimony of the two police officers, the obvious inference can be drawn that Boff was wearing the backpack at the time he was stopped by the second police officer.[1]

The backpack was taken from Boff by the police officer. The backpack and the defendant were then driven to the Dolores County sheriff's office in Dove Creek.[2] After Boff was placed in custody, the police opened the backpack without a search warrant for the purpose of discovering additional evidence.[3] They found marijuana in the backpack. Boff was subsequently charged by information with cultivation of marijuana,[4] possession with intent to distribute marijuana,[5] and possession of more

---

1. At the time the second police officer stopped the motorcyclist, he did not have a description of the subject or the subject's vehicle. The second officer was able to infer that this motorcyclist was the person the first police officer had seen from three facts: first, earlier in the day he had seen a set of motorcycle tire tracks leading into but not out of the canyon where the marijuana plants were growing; second, the road was blocked by a gate where the dirt trail leading into the canyon intersected the road, so that anyone driving on the road would have to pass by him; and third, he knew that the subject was leaving the area.

   The district court determined that Boff's arrest was lawful.

2. The record does not reveal how much time elapsed from the time Boff was arrested to the time his backpack was searched. Nor does the record reveal the distance from the place Boff was arrested to the place of detention in Dove Creek. Other than the fact that the backpack was searched at a time and place other than the time and place of arrest, however, the distance and time elapsed is not at issue.

3. The People asserted in their brief to this court that the reason the police did not search the backpack at the time they arrested Boff was because of inadequate lighting, tools to collect the evidence, and manpower, and because they were worried about the contents blowing away or being tainted by the elements of nature.

4. § 18–18–106(8)(a), 8B C.R.S. (1986).

5. § 18–18–106(8)(b)(I), 8B C.R.S. (1986).

than eight ounces of marijuana.[6]

Boff moved to suppress all evidence seized as the product of an illegal arrest, and to suppress the contents of the backpack as an illegal search and seizure in violation of the fourth amendment. The suppression hearing was held on February 9, 1988. At the conclusion of the hearing, the district court ruled that Boff had been lawfully arrested, so the evidence did not have to be suppressed as the product of an illegal arrest. The district court nevertheless found that the backpack had been illegally searched. The district court stated that a warrantless search of the backpack could not be justified as an inventory search because the purpose of the search had been to find evidence of the crime.[7] Nor could it be justified as a search incident to a lawful arrest because the search occurred at the police station and because the backpack had been out of the control of the defendant from the time he was arrested. Because there were no exigent circumstances to justify such a search without a warrant and because the police could easily have procured a warrant, the district court suppressed the marijuana found in the backpack.

The People appealed to this court pursuant to C.A.R. 4.1, contending that the search of the backpack was a search incident to a lawful arrest. They argue that the search was valid because the police could have searched the backpack when they arrested Boff and because the United States Supreme Court does not require that the search of the defendant or his belongings be contemporaneous with arrest.

## II.

■ The district court in its order suppressing the contents of the backpack failed to state whether its order was based on federal or state constitutional law. When the lower court does not make clear that its ruling is grounded on state rather than federal constitutional principles, we will presume that it relied on federal law in reaching its decision. See Michigan v. Long, 463 U.S. 1032, 1040–41, 103 S.Ct. 3469, 3476–77, 77 L.Ed.2d 1201 (1983); People v. Gann, 724 P.2d 1318, 1320 (Colo. 1986).

■ A search conducted without a warrant is prima facie invalid unless it falls within the limits of several well-recognized exceptions to the warrant requirement. People v. Casias, 193 Colo. 66, 72, 563 P.2d 926, 930 (1977). Even within the scope of a given exception, the search must meet the ultimate requirement of reasonableness. See People v. Santistevan, 715 P.2d 792, 794 (Colo.), cert. denied, 479 U.S. 965, 107 S.Ct. 468, 93 L.Ed.2d 412 (1986).

■ One of the well-recognized exceptions to the warrant requirement is the search incident to a lawful arrest. United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427 (1973); People v. Alexander, 193 Colo. 27, 29, 561 P.2d 1263, 1265 (1977). The backpack Boff was wearing when stopped could have been searched by the police at the time he was arrested as a search incident to his arrest. As we stated in People v. Bischofberger, 724 P.2d 660 (Colo.1986):

[I]n the context of the Fourth Amendment the scope of a search incident to a lawful custodial arrest is quite broad. The search need not be limited to a mere pat-down of the arrestee's outer clothing, but may extend to pockets and other containers, opened or closed, found on the person of the arrestee or within his immediate reach. E.g., [New York v. Belton ], 453 U.S. 454 [101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) ]; [Gustafson v. Florida ], 414 U.S. 260 [94 S.Ct. 488, 38 L.Ed. 2d 456 (1973) ]; [United States v. Robinson ], 414 U.S. 218 [94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ]; People v. Tottenhoff, 691 P.2d 340 (Colo.1984); People v. Traubert, 199 Colo. 322, 608 P.2d 342

---

6. § 18–18–106(4)(b), 8B C.R.S. (1986).

7. The People do not dispute the district court's correct assertion that the search of the backpack cannot be justified as an inventory search because the purpose of the search was to find other evidence of criminal activity. See Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987).

(1980). Such a search of the arrestee's person requires no independent justification, and the searching officer may seize and examine weapons, contraband, or other articles which the officer reasonably believes to be related to criminal activity even though these articles do not directly relate to the offense for which the arrest itself was effected.

*Id.* at 664–65 (footnote and citations omitted) (emphasis in original); *see New York v. Belton,* 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864–65, 69 L.Ed.2d 768 (1980) (incident to arrest of automobile occupant, police may seize and search open or closed containers found in the passenger compartment); *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1968) (incident to arrest, police may search area within the immediate control of the person arrested); *People v. Hufnagel,* 745 P.2d 242, 247–48 (Colo.1987) (search of closed endtable after defendant had been arrested and handcuffed upheld as search incident to arrest); *People v. Ortega,* 181 Colo. 223, 229, 508 P.2d 784, 788 (1973) (search of pocket at police station upheld as search incident to arrest); *see also United States v. Litman,* 739 F.2d 137, 139 (4th Cir.1984) (en banc) (search of shoulder bag in close proximity to defendant upheld as search incident to arrest); *United States v. Mefford,* 658 F.2d 588, 593 (8th Cir.1981) (search of brown paper bag carried by defendant upheld as search incident to arrest), *cert. denied,* 455 U.S. 1003, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982); *Lee v. State,* 311 Md. 642, 668, 537 A.2d 235, 248 (1988) (search of gym bag hanging on fence at distance of two to eight feet from prone defendant upheld as search incident to arrest); *Commonwealth v. Madera,* 402 Mass. 156, 157, 521 N.E.2d 738, 739 (1988) (search of canvas gym bag defendant was carrying on his shoulder upheld as search incident to arrest); *Carrasco v. State,* 712 S.W.2d 120 (Tex.Crim.App.1986) (search of "gym bag" or "overnight bag" slung over defendant's shoulder upheld as search incident to arrest). A search incident to an arrest "may have as one of its purposes the discovery of objects or things which constitute evidence that the person arrested has committed a crime." *United States v. Simpson,* 453 F.2d 1028, 1030 (10th Cir.) (citations omitted), *cert. denied,* 408 U.S. 925, 92 S.Ct. 2504, 33 L.Ed.2d 337 (1972). The question then becomes whether a warrantless search of containers found on or within the possession of the person which is not contemporaneous with an arrest falls outside of the judicially recognized exception of search incident to a lawful arrest.

### A.

In *People v. Glaubman,* 175 Colo. 41, 485 P.2d 711 (1971), we upheld the warrantless search of a sealed leather pouch that had been tied to the defendant's pants, as well as a purse and a book he was holding. The items were taken from the defendant at the time he was arrested, transported to the police station, and searched. We noted that, while searches not contemporaneous with arrest are generally improper, this was valid as either a search incident to arrest or as an inventory search because the police promptly took the defendant to the police station after arresting him rather than searching him in a public area. *Id.* at 53–54, 485 P.2d at 718. Also, in *People v. Vaughns,* 182 Colo. 328, 513 P.2d 196 (1973), we upheld a search of a person, clothes, and purse that was delayed long enough to transport a female defendant to the police station to be searched by a matron as required by department regulations. Since these cases were decided, however, the United States Supreme Court has announced new guidelines concerning searches incident to arrest.

At one time, the United States Supreme Court held that a search incident to a lawful arrest must be "substantially contemporaneous with the arrest." *See Stoner v. California,* 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856 (1964) (invalidating warrantless search conducted two days before arrest); *Preston v. United States,* 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) (invalidating warrantless search of car in which defendants were arrested after car was transported to police garage). The Court abandoned the contemporaneous

limitation for searches of the person incident to a lawful arrest, however, in *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). In *Edwards,* a search of the defendant's clothing ten hours after he was arrested, for the purpose of examining his clothes for evidence of paint chips, was upheld as a search incident to a lawful arrest. In addition to recognizing that such a search could be justified as a search for weapons, instruments of escape, and evidence of crime, the Court stated that "[i]t is also plain that searches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at the place of detention." *Id.* at 803, 94 S.Ct. at 1237.

In *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), however, the Court declined to overturn the suppression of a two hundred pound double-locked footlocker that had been placed into the trunk of an automobile by the suspects seconds before their arrest. The footlocker was seized by federal agents after the arrest, transported to a different location, and opened without a search warrant more than an hour after the suspects were arrested and securely in custody. The Court distinguished *Edwards* and *Robinson* as a search of the person rather than a search of luggage or other property. *Id.* at 16 n. 10, 97 S.Ct. at 2486 n. 10. It stated: "Once law enforcement officers have reduced luggage or other personal property *not immediately associated with the person* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *Id.* at 15, 97 S.Ct. at 2485 (footnote omitted) (emphasis added). This emphasized language has been interpreted by lower courts to create

an exception to the warrant requirement for wallets, containers found on the person, and containers such as purses which are "immediately associated with the person." *See Hinkel v. Anchorage,* 618 P.2d 1069 (Alaska 1980); *Parris v. State,* 270 Ark. 269, 604 S.W.2d 582 (1980); *Dawson v. State,* 40 Md.App. 640, 395 A.2d 160 (1978); *State v. Horton,* 44 N.C.App. 343, 260 S.E.2d 780 (1979); *Carrasco v. State,* 712 S.W.2d 120 (Tex.Crim.App.1986); *see also* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 5.5(a), at 533–34 (2d ed.1987).

The position rather consistently taken by lower courts is that a search at the police station of the person, clothes, or containers found on or within the possession of the person is justified to the same extent that such a search would have been justified at the time and place of arrest. *See, e.g., United States v. Burnette,* 698 F.2d 1038, 1049 (9th Cir.) (search of purse seized at police station), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983); *cf. United States v. Johns,* 469 U.S. 478, 487, 105 S.Ct. 881, 887, 83 L.Ed.2d 890 (1984) (warrantless search of packages in automobile three days after arrest upheld under automobile exception because packages could have been searched at time of arrest without a warrant). *See generally* 2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 5.3(a), at 479–80 (2d ed.1987); Annotation, *Lawfulness of Warrantless Search of Purse or Wallet of Persons Arrested or Suspected of Crime,* 29 A.L.R.4th 771, 842–51 (1984 & 1988 Supp.); Annotation, *Modern Status of Rule as to Validity of Nonconsensual Search and Seizure Made Without Warrant After Lawful Arrest as Affected by Lapse of Time Between, or Difference in Places of, Arrest and Search,* 19 A.L.R.3d 727, 739–41 (1968 & 1988 Supp.).[8] This is

---

**8.** *See also Parris v. State,* 270 Ark. 269, 270–273, 604 S.W.2d 582, 583–84 (Ark.App.1980) (search of purse seized at police station); *People v. Chavez,* 632 P.2d 574, 579 (Colo.1981) (defendant returned by police to scene of crime after arrest and forced to empty pockets in front of burglary victims); *People v. Harfmann,* 633 P.2d 500, 501 (Colo.App.1981) (package of cigarette papers seized at police station and searched thirty minutes later); *Alston v. United States,* 518 A.2d 439, 444–46 (D.C.App.1986) (purse seized in parking lot and searched by security guard in back room of store); *Dunham v. District Court,* 442 A.2d 121, 127 (D.C.App.1982) (purse searched at time of arrest, seized, and more thoroughly searched three and one-half hours

so even where the defendant's access to the objects searched was terminated between the time of arrest and the time of the search. *See United States v. Basurto,* 497 F.2d 781, 792 (9th Cir.1974).

We believe that the *Edwards* rationale applies under the facts of this case. A search at the police station of a suspect, his clothes, and personal property immediately associated with his person, is justified to the same extent that such a search could have been made at the time and place of arrest.[9] *See People v. Harfmann,* 633 P.2d 500, 501 (Colo.App.1981); *see also United States v. Hoye,* 671 F.Supp. 1098, 1103 (E.D.Va.1987) (search two days after arrest of leather bag carried by defendant but placed an arms's length away from body before arrest upheld under *Edwards* as a search incident to arrest). In this case, the backpack could have been searched at the time Boff was arrested. Boff was conveyed promptly to the police station. The search occurred promptly after Boff was booked. Under these circumstances, we conclude that the search of the backpack falls into the judicially recognized exception of a search incident to a lawful arrest.

### B.

Boff contends for the first time in his brief to this court that the contents of his backpack must be suppressed under our holding in *People v. Little,* 198 Colo. 244, 598 P.2d 140 (1979). We do not agree.

In *Little,* we upheld the suppression of drugs found in the zippered compartment of a travel bag. We rejected the claim that the closed compartment of the travel bag could be searched incident to a lawful arrest. We stated: "Absent exigent circum-

stances, a general exploratory search following a lawful arrest, as made in this case, is not justified." *Id.* at 248, 598 P.2d at 143 (citing *People v. Hines,* 195 Colo. 71, 73, 575 P.2d 414, 415 (1978)).

This statement of the law in *Little* is inconsistent with our more recent statements in *Tottenhoff* and *Bischofberger* that a search incident to an arrest of closed containers found on or within the reach of the person arrested does not require independent justification. *Bischofberger,* 724 P.2d at 664–65; *Tottenhoff,* 691 P.2d at 345; *see also Harfmann,* 633 P.2d at 501. As the United States Supreme Court stated:

> The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend upon what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.

*United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973); *see also Belton,* 453 U.S. at 461 n. 5, 101 S.Ct. at 2865 n. 5 (rejecting the notion that an item can no longer be searched incident to an arrest once it is reduced to the exclusive control of the police).

The validity of the search of the backpack turns not on the presence or absence of the exigencies of police protection and evidence preservation, but on the fact that

---

later at police station; *State v. Calegar,* 104 Idaho 526, 530–31, 661 P.2d 311, 315–16 (1983) (suitcase seized from automobile in which defendant was arrested and searched at police station); *State v. Woods,* 637 S.W.2d 113, 116 (Mo.App.1982) (search of purse seized at police station); *State v. Beaucage,* 424 A.2d 642 (R.I. 1981) (search of purse seized at police station); *Stewart v. State,* 611 S.W.2d 434, 438 (Tex.Crim. App.1981) (search of purse seized at police station).

**9.** For purposes of comparing *Edwards* to *Chadwick,* we find that a backpack is more like a purse than a two-hundred pound double-locked footlocker. *See Chadwick,* 433 U.S. at 21, 97 S.Ct. at 2488 (Blackmun, J., dissenting) (recognizing the difficulty of explaining how such items as purses and briefcases should be analyzed under *Chadwick* and suggesting that *Chadwick*'s holding might in the future be limited to "objects that are relatively immobile by virtue of their size or absence of a means of propulsion.").

a person, under full custodial arrest based on probable cause, loses his expectation of privacy as to those items on his person at the time of his arrest. *See State v. Patton,* 47 Or.App. 169, 171, 613 P.2d 1102, 1103 (1980); *see also Harfmann,* 633 P.2d at 501. In suppressing the marijuana, the district court relied on the faulty premise that some independent justification other than the defendant's lawful arrest was required to search the backpack at the police station. *Cf. People v. Inman,* 765 P.2d 577, 581 (Colo.1988) (reversing order suppressing evidence found in inventory search). In so ruling, the district court erred.

We hold that the search of the backpack at the police station was justified by the lawful arrest and prompt conveyance of the defendant to the police station. We conclude that such a search was reasonable under the totality of the circumstances as a search incident to a lawful arrest.

The order of the district court is reversed.

ERICKSON, J., specially concurs.

LOHR, J., dissents, QUINN, C.J., and KIRSHBAUM, J., join in this dissent.

ERICKSON, Justice, specially concurring:

In my view, the factual scenario which led to the defendant's arrest is different from the facts that brought about a split decision in *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), and an opinion of a divided Court in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In this case, we are not dealing with *Edwards,* where paint chips were recovered from the defendant's clothing after he was jailed that matched paint chips at the crime scene. We are also not confronted with entry into the double locked footlocker that was dealt with in *Chadwick.*

The facts and circumstances of each search and seizure case determine the reasonableness of the search. *Chimel v. California,* 395 U.S. 752, 765, 89 S.Ct. 2034, 2041, 23 L.Ed.2d 685 (1969). Search and seizure cases must be dealt with on a case-by-case basis. In this case, the defendant, wearing the blue backpack, was seen and identified at a marijuana field in "Secret Canyon," and stopped at the request of the officer who saw him as he was leaving the canyon. When the officer who first observed him came in contact with the defendant, who had been stopped by the second officer, the defendant was no longer wearing the backpack, but it was near the defendant and the motorcycle he had been riding. Probable cause existed for a custodial arrest which provided grounds for a search incident to the arrest. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). As I view the record, the backpack was in the "immediate possession" of the defendant and was properly the subject of a search either at the site of the arrest or when the defendant arrived at the sheriff's office or jail. *United States v. Edwards,* 415 U.S. at 805, 94 S.Ct. at 1238. The warrantless search in this case was reasonable and should be upheld. See *United States v. Robinson,* 414 U.S. at 235, 94 S.Ct. at 476; *People v. Casias,* 193 Colo. 66, 72, 563 P.2d 926, 930 (1977).

Accordingly, I specially concur.

LOHR, Justice, dissenting:

The majority extends the rationale of *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), to uphold the search of Boff's backpack as a search incident to a lawful custodial arrest. However, *Edwards* applies to a search of a person and any item immediately associated with that person. Under federal constitutional law, searches of a person pursuant to a lawful custodial arrest are distinguished from searches of possessions within an arrestee's immediate control. *United States v. Chadwick,* 433 U.S. 1, 16 n. 10, 97 S.Ct. 2476, 2486 n. 10, 53 L.Ed.2d 538 (1977). Under *Chadwick,* "[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no

longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." 433 U.S. at 15, 97 S.Ct. at 2485. In my view, *Chadwick* controls the present case. Because the reasoning and result reached by the majority are inconsistent with *Chadwick*, I dissent.

### I.

The majority views the issue presented as "whether a warrantless search of containers found on *or within the possession* of the person which is not contemporaneous with an arrest falls outside of the judicially recognized exception of search incident to a lawful arrest." Maj. op. at 649 (emphasis added). This formulation of the issue fails to acknowledge the different categories of search incident to arrest and the different requirements to justify a warrantless search in each category. Among the different categories that have been developed under federal constitutional standards are (1) a search of the person and property carried on the person as an incident of a lawful arrest, *e.g., United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974); (2) a search of the occupant of an automobile and the passenger compartment of the automobile incident to a lawful arrest, *e.g., New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); and (3) a search of possessions within an arrestee's immediate control incident to a lawful arrest, *e.g.,*

*United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).[1]

The case before us presents the issue of a search of a person's possessions incident to a lawful arrest. The evidence in the record indicates that Boff was not wearing the backpack at the time of his arrest. The police, and not Boff, transported the backpack to the police station. *See Edwards,* 415 U.S. at 803, 94 S.Ct. at 1237 (police may search property that *suspect* brings with him to police station). Additionally, this is not a case controlled by the rules governing warrantless automobile searches. Instead, the search at issue here is a search of possessions within an arrestee's immediate control, and not the search of the arrestee's person, incident to a lawful arrest.

In *Chadwick,* the suspects were arrested while loading a footlocker into the trunk of a car. The arresting officers took control of the footlocker, transported it to a different location, opened it, and discovered large quantities of marijuana within. The suspects were securely in custody when the search was conducted. The United States Supreme Court held that the search, which took place more than an hour after federal agents had seized the footlocker and while the footlocker was in the exclusive control of the federal agents, violated the fourth amendment. 433 U.S. at 15–16, 97 S.Ct. at 2485–2486. The facts in *Chadwick* are remarkably similar to the facts in the present case.[2] Here, instead of a footlocker, Boff

---

**1.** Another category of warrantless searches that might justify a search of containers possessed by an arrestee is inventory searches. *See Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); 2 W. LaFave, *Search and Seizure* § 5.5(b) (1987). As noted by the majority, the People do not argue here that the search of Boff's backpack can be justified as an inventory search. *See* maj. op. at 648 n. 7.

**2.** The majority attempts to distinguish *Chadwick* factually based on the characteristics of the luggage searched. *See* maj. op. at 650–651, 651 n. 9. However, distinctions as to the fourth amendment protection to be accorded various items of luggage based on characteristics such as size, weight, and whether the luggage was locked have been specifically rejected by the United States Supreme Court. *See Arkansas v.*

*Sanders,* 442 U.S. 753, 762–63 n. 9, 99 S.Ct. 2586, 2592–93 n. 9, 61 L.Ed.2d 235 (1979) (relatively small, unlocked suitcase is afforded same protection as footlocker in *Chadwick* ). The key inquiry is not the size of the luggage or its locked or unlocked status, but whether the item has a "fundamental character as a repository for personal, private effects." *Id.* Here, Boff's backpack is similar enough to a small unlocked suitcase that it can be fairly characterized as a repository for personal, private effects. By placing his possessions in his backpack, Boff "manifested an expectation that the contents would remain free from public examination." *Chadwick,* 433 U.S. at 11, 97 S.Ct. at 2483. "Once placed within such a container, a diary and a dishpan are equally protected by the Fourth Amendment." *Robbins v. California,* 453 U.S. 420, 426, 101 S.Ct. 2841, 2846, 69

had a backpack.[3] The backpack was near Boff when he was arrested, but it was taken to the sheriff's office by the officers and was not opened and searched until after Boff had been placed in custody. As in *Chadwick,* Boff's backpack had been reduced to the exclusive control of law enforcement officers. Therefore, "a search of that [backpack] is no longer an incident of the arrest." 433 U.S. at 15, 97 S.Ct. at 2485. Despite these similarities, the majority finds no violation of the fourth amendment in this instance. Such a result is contrary to the established federal law that the majority purports to be applying.

## II.

To reach its conclusion that the warrantless search of Boff's backpack was justified as a search incident to a lawful arrest, the majority relies on *United States v. Edwards,* 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974). In *Edwards,* an arrestee was jailed and continued to wear the same clothing in which he had been arrested. A day after the arrest, officers searched that clothing. The United States Supreme Court upheld the search on the ground that since the arrestee's clothing could have been lawfully searched without a warrant at the time of his arrest, it was not a fourth amendment violation to do so later even though a substantial period of time had elapsed. 415 U.S. at 805, 94 S.Ct. at 1238. As the majority states, *Edwards* allows "[a] search at the police station of a

suspect, his clothes, and personal property immediately associated with his person ... to the same extent that such a search could have been made at the time and place of arrest." Maj. op. at 651. This reading of *Edwards* is supported by the United States Supreme Court's decision in *Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). In *Chadwick,* however, the Court distinguished *Edwards* as applying only to searches of a person and personal property (e.g., clothing) "immediately associated with the person of the arrestee." 433 U.S. at 15, 16 n. 10, 97 S.Ct. at 2485, 2486 n. 10;[4] *see also* 2 W. LaFave, *Search and Seizure* § 5.3(a), at 479 (1987) (under *Edwards* rationale, courts have allowed warrantless searches of arrestee's pockets, wallet, containers on the person, and underclothing). It is contrary to the rationale of *Edwards,* as interpreted by *Chadwick,* to hold, as the majority does here, that a search of an item such as a backpack not worn by the suspect at the time of arrest can be justified as a search incident to arrest when that search is conducted later at a location to which the police have transported the backpack.

The majority also cites *People v. Bischofberger,* 724 P.2d 660 (Colo.1986), and *People v. Tottenhoff,* 691 P.2d 340 (Colo.1984), to support its broad interpretation of the scope of searches incident to arrest. Specifically, the majority cites these cases for the proposition that such a search may include containers found within the reach

---

L.Ed.2d 744 (1981) (Stewart, J., plurality opinion). Furthermore, an effort to distinguish the relative privacy interests in different types of containers is not fruitful; "[w]hat one person may put into a suitcase, another may put into a paper bag." *Id.* In sum, *Chadwick* cannot be factually distinguished based on the characteristics of the container at issue.

**3.** Despite the majority's characterization, the record does not indicate whether Boff was wearing the backpack when he was first stopped. The record reveals only that the backpack was on the ground near Boff when the second officer arrived. Furthermore, there is no indication in the record as to what type of backpack Boff had, e.g., whether it was a small daypack or a full-size framepack. Thus, no inference can be drawn regarding the location of the backpack when Boff was first stopped. For

instance, Boff may have been wearing the backpack when he was first stopped, or the backpack may have been attached to his motorcycle. The record is simply silent on this point.

**4.** In *Chadwick,* the United States Supreme Court stated:

Unlike searches of the person, *United States v. Robinson,* 414 U.S. 218 [94 S.Ct. 467, 38 L.Ed.2d 427] (1973); *United States v. Edwards,* 415 U.S. 800 [94 S.Ct. 1234, 39 L.Ed.2d 771] (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest. Respondents' privacy interest in the contents of the footlocker was not eliminated simply because they were under arrest.

433 U.S. at 16 n. 10, 97 S.Ct. at 2486 n. 10.

of the arrestee. Each of these cases, however, involved items removed from a pocket of clothing worn by the suspect at the time of arrest. Neither involved "closed containers found ... within the reach of the person arrested," as the majority implies. Maj. op. at 651. These cases, therefore, are inapposite.

The majority cites *New York v. Belton*, 453 U.S. 454, 461 n. 5, 101 S.Ct. 2860, 2865 n. 5, 69 L.Ed.2d 768 (1981), as "rejecting the notion that an item can no longer be searched incident to an arrest once it is reduced to the exclusive control of the police." Maj. op. at 651. However, the Court in *Belton* was rejecting the "exclusive control" argument only as it applied to a search as in *Belton* conducted at the scene of the arrest. *See* 453 U.S. at 460, 101 S.Ct. at 2864; 2 W. LaFave, *Search and Seizure* § 5.5(a) at 535 (under *Belton*, search must be "contemporaneous" with the arrest). Thus, when an officer seizes an item from an arrestee during the arrest and proceeds to search it *at that time,* the "exclusive control" argument will not invalidate this warrantless search. *See Belton*, 453 U.S. at 461–62 n. 5, 101 S.Ct. at 2864–65 n. 5 ("[U]nder this fallacious [exclusive control] theory no search or seizure incident to a lawful custodial arrest would ever be valid; by seizing an article even on the arrestee's person, an officer may be said to have reduced that article to his 'exclusive control.'").

The Court in *Belton* clearly distinguished the *Chadwick* delayed search situation as one where the "exclusive control" argument would still have force. In *Belton*, the Court distinguished *Chadwick* by noting that the search in *Chadwick* "was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency." *Belton*, 453 U.S. at 462, 101 S.Ct. at 2865 (quoting *Chadwick*, 433 U.S. at 15, 97 S.Ct. at 2485). Thus, the full text of the Court's opinion in *Belton* indicates that the *Chadwick* "exclusive control" rule is still binding law which should be applied to the search of Boff's backpack. Moreover, as noted above, *Belton* was an automobile search case and is therefore distinguishable from the search of Boff's backpack in the present case. *See* 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3 (limiting holding of *Belton* to automobile searches).

### III.

In sum, the majority has incorrectly analyzed the search of Boff's backpack under the framework of federal law applicable to the search of an arrestee's possessions incident to arrest. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), provides the controlling federal law in this area. Under *Chadwick*, the Dolores County sheriff's officers were required to obtain a warrant to search Boff's backpack once the officers reduced the backpack to their exclusive control. Because the majority finds no such requirement here, I dissent.

QUINN, C.J., and KIRSHBAUM, J., join in this dissent.