The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Craig Joseph TURTURA,
Defendant–Appellee.

No. 96SA125.

Supreme Court of Colorado,
En Banc.

July 1, 1996.

David J. Thomas, District Attorney, Donna Skinner Reed, Chief Appellate Deputy District Attorney, First Judicial District, Golden, for Plaintiff–Appellant.

Moyer, Beal and Vranesic, John R. Vranesic, Lakewood, for Defendant–Appellee.

Justice KOURLIS delivered the Opinion of the Court.

The prosecution brings this interlocutory appeal pursuant to section 16–12–102(2), 8A C.R.S. (1986), and C.A.R. 4.1 to challenge the trial court's order suppressing various statements made by the defendant, Craig Joseph Turtura. Turtura is charged with two counts of vehicular assault[1] arising out of a traffic accident which occurred on April 1, 1995. We conclude that the trial court improperly suppressed the statements and therefore reverse and remand for further proceedings consistent with this opinion.

## I.

As the result of a one-car accident on April 1, 1995, Turtura was hospitalized for injuries at Lutheran Hospital. Trooper Gary Born arrived at the scene of the accident and determined through questioning of witnesses that the driver of the vehicle might be subject to a charge of Driving Under the Influence. As a result, a second trooper, Frank Acosta, went to Lutheran Hospital in order to obtain three blood samples from Turtura. In the course of his conversations with Turtura at the hospital on April 1, Acosta stated that Turtura was being placed under arrest for Driving Under the Influence of Alcohol.[2] After Acosta had collected the blood samples, he informed Turtura that he was free to go but that charges might be brought against him. After receiving treatment for his injuries, Turtura was released from the hospital.

On April 4, 1995, Born contacted Turtura by telephone. He initiated a conversation in which he asked the defendant about the location of individuals in the vehicle at the time of the accident and whether the individuals were wearing seat belts. Turtura answered Born's questions and indicated that he had been driving the vehicle. During the conversation, Turtura agreed to meet with Born the next day.

That meeting occurred on April 5, 1995, at Bob's Towing where Turtura's vehicle was being held. Born and Turtura sat in Turtura's brother's vehicle while Born read a *Miranda* form to Turtura and filled in Turtura's answers to the various questions. In response to the question of whether Turtura wished to have an attorney present during the conversation, Born checked "yes" on the *Miranda* form. However, Turtura then signed the portion of the form entitled "Waiver of Rights" which included the language: "I understand my above rights, and am aware of what I am doing. I agree to answer questions. No threats, promises or coercion have been used against me. I do not want an attorney present." Born proceeded to ask Turtura questions and elicited information from him. At the motions hearing, Born testified that he had checked the "yes" box concerning a desire to have counsel in error and that Turtura had made no such request.

Turtura moved to suppress the statements made on April 4, 1995, over the telephone and the statements made in the vehicle on April 5, 1995. Turtura asserted that an arrest had occurred at the hospital on April 1, 1995, and that Crim. P. 5 requires that anyone arrested be taken before a judge or magistrate without delay. Turtura sought to suppress the statements of both April 4 and April 5 on the grounds that such an appearance and advisement had not occurred. As to the April 5, 1995, statements, Turtura additionally asserted that Born had engaged in an improper custodial interrogation after counsel had been requested.

The trial court concluded that Turtura had been placed under arrest at the hospital on

1. Sections 18–3–205(1)(a) and (1)(b)(I), 8B C.R.S. (1995 Supp.).

2. Acosta testified at the motions hearing that he had advised Turtura that he was under arrest for the purpose of obtaining a blood sample. However, Acosta's written report reflected that he had advised Turtura that he was under arrest for Driving Under the Influence of Alcohol. The trial court resolved this conflict in favor of the written report.

April 1, and that a violation of Crim. P. 5 had taken place because Turtura had not been taken before a court for an advisement. The trial court further found that Turtura's right to counsel had been violated by the April 5 conversation because the written *Miranda* form indicated a desire for counsel. As a punitive measure, the trial court held the statements given after the execution of that form to be involuntary. Therefore, the court suppressed Turtura's statements made to Born on April 4 and April 5.

Because we conclude that Turtura had been subject only to a limited seizure for the purpose of taking the blood samples, rather than to an actual arrest, we do not find the mandate of Crim. P. 5 applicable. Thus, the trial court improperly suppressed the statements on that basis. As to the issue of suppression of the April 5 statements on constitutional grounds, we find that the trial court erroneously failed to resolve the factual question of whether Turtura actually requested counsel or whether Born made a bona fide mistake on the *Miranda* form. The trial court should have resolved this issue by determining the credibility of Born's testimony and by affording the defendant the opportunity to rebut Born's testimony.

## II.

We first address the trial court's suppression of the April 4 and 5 statements on the grounds that Turtura's encounter with Acosta at the hospital on April 1 resulted in a violation of Crim. P. 5. Crim. P. 5(a) states that "[i]f a peace officer or any other person makes an arrest, either with or without a warrant, the arrested person shall be taken without unnecessary delay before the nearest available county or district court." The trial court concluded that Acosta's detention of Turtura at the hospital was an "arrest" for the purposes of Crim. P. 5. Because Turtura was not brought before a court subsequent to the detention, the trial court held that the mandate of Crim. P. 5 had been violated.

The prosecution argues that Acosta's detention of Turtura was solely for the purpose of taking the blood samples and that it did not rise to the level of an arrest. The prosecution contends that since there was no ar-

rest, the trial court erroneously applied Crim. P. 5. We agree with the prosecution's argument.

■ "Although an arrest constitutes a 'seizure' of the person within the constitutional sense of that term, not all forms of 'seizure' are necessarily arrests." *People v. Tottenhoff,* 691 P.2d 340, 343 (Colo.1984). A limited seizure of a person must be brief in duration, limited in scope, and narrow in purpose. *Id.* "An arrest . . . in contrast, usually results in the officer's taking the person arrested to the station house for booking procedures and the filing of criminal charges." *Id.* at 343–44; *see also Dunaway v. New York,* 442 U.S. 200, 213–14, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824 (1979); *Terry v. Ohio,* 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). Whether a person has been subject to a limited seizure or an arrest must be determined by the court taking into account the totality of circumstances and applying an objective "reasonable person" standard. *Tottenhoff,* 691 P.2d at 344; *People v. Pancoast,* 659 P.2d 1348, 1350 (Colo.1982). "Thus, if under the totality of circumstances a reasonable person would have believed he were being arrested, rather than merely temporarily detained for a brief investigation, an arrest has occurred . . . ." *Tottenhoff,* 691 P.2d at 344.

■ In this case, Turtura was detained by Acosta so that the blood samples could be taken. Once the samples were drawn, Acosta informed Turtura that charges might be brought against him but that in the meantime he was free to go. Turtura in fact left the hospital and was not contacted by law enforcement until April 4—some days later. Turtura was thus detained by Acosta no longer than was necessary to draw the blood samples. He was promptly and unconditionally released after the samples were taken. Turtura was not physically restrained, taken to a police station, or booked. Taking into account the totality of circumstances, a reasonable person in Turtura's place would have understood that he or she was only being detained for the purpose of obtaining blood samples. Although the trial court found that Acosta used the term "arrest" in speaking to

Turtura, Turtura was in fact subjected only to a limited seizure for the purpose of taking the blood samples, and was not actually placed under arrest.

Because we conclude that there was no arrest, Crim. P. 5 was not implicated. We therefore reverse the trial court's order that Turtura's statements of April 4 and 5, 1995, be suppressed on the ground that they were taken in violation of Crim. P. 5.

## III.

The trial court also suppressed the April 5 statements on the basis that Born violated Turtura's *Miranda* right to have an attorney present during the interrogation. The prosecution argues that by signing the "Waiver of Rights," Turtura had waived his *Miranda* rights. We conclude that whether Turtura waived his *Miranda* rights in this case depends to a large extent on questions of credibility which must be resolved by the trial court.

## A.

In its seminal case, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court determined, under the aegis of the Fifth Amendment, that police-initiated custodial interrogations must cease if the accused requests that counsel be present. *See also Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981). However, the accused may also intentionally and knowingly waive the *Miranda* right to counsel. *Miranda*, 384 U.S. at 475–76, 86 S.Ct. at 1628. The responsibility of determining whether there has been a valid waiver of a fundamental right falls on the trial court judge. *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *People v. Richards*, 194 Colo. 83, 568 P.2d 1173, 1175 (1977).

In this case, there is contradictory evidence as to whether Turtura validly waived

his *Miranda* rights. The *Miranda* form accompanied by the "Waiver of Rights" indicated that Turtura both requested counsel *and* waived his right to counsel. Born testified that although he had checked "yes" as the answer to the question of whether Turtura desired to have counsel, he had done so in error and that Turtura had not requested counsel to be present.

Instead of weighing the evidence and testimony to determine whether Turtura had waived his rights, the trial court concluded that it was required as a matter of constitutional law to resolve any inconsistencies in the evidence in Turtura's favor in order to avoid placing Turtura in a position where he would be required to testify if he wished to rebut Born's evidence. The trial court held that placing the burden of rebutting Born's testimony on Turtura would "permit a substantial controversy which would require [Turtura] to testify and place his own credibility at issue...." The trial court resolved the issue "in favor of the protection of a constitutional right" and ordered the April 5 statements suppressed.[3]

Implicit in this conclusion is the determination that Turtura has a constitutional right to be protected from the consequences of a decision not to testify at a suppression hearing. Turtura, however, has no constitutional right to be protected from having to choose whether to testify concerning any request for counsel. The availability of the Fifth Amendment protection against self-incrimination is "confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *see* U.S. Const. amend. V; Colo. Const. art. II, § 18. If Turtura were to take the stand in the suppression hearing and testify as to whether he had requested counsel, that testimony would have no bearing on his ultimate guilt or innocence. Of course, he may choose not

---

**3.** As a consequence for the *Miranda* violation, the trial court labeled the statements involuntary and suppressed them for both substantive and impeachment purposes. We note that a finding of involuntariness would not necessarily follow from the trial court's conclusion that the defen-

dant's right to counsel had been abridged. A finding of involuntariness "rests upon something which, time, place, circumstances, or individual considered, would be equivalent to some measure of compulsion." *Leick v. People*, 136 Colo. 535, 556, 322 P.2d 674, 687 (1958).

to testify or he may choose to present other evidence. In any event, the trial court may draw such inferences as are reasonable from the evidence or lack thereof.

"Often it will be necessary for the defendant to be a witness at a suppression hearing." 1 Wayne R. LaFave and Jerold H. Israel, *Criminal Procedure*, § 10.5(c) at 803. In such cases, the defendant is protected by CRE 104(d) which states that "[t]he accused does not, by testifying at a preliminary hearing, subject himself to cross-examination as to other issues in the case." CRE 104(d).

Although the trial court might be required to weigh Turtura's credibility against that of Born, such a determination would not prejudice the jury. The trial court would be making its decision at the time of the motions hearing, and the jury would have no knowledge of those proceedings. Hence, we conclude that no constitutional right is implicated by placing Turtura in the position of having to testify or running the risk that the court may believe Born's testimony.

■ Even if Turtura were to testify, the prosecution would still bear the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986) ("Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence").

### B.

■ Whether there was a *Miranda* violation in this case is a question which the trial court must resolve. *See Deas v. Cronin*, 190 Colo. 177, 544 P.2d 991 (1976) (credibility of witnesses, probative effect and weight of evidence, and inferences and conclusions to be drawn therefrom, are all within the province of the trial court as trier of fact). In the absence of any testimony from Turtura, the trial court must make that determination by weighing the credibility of Born's oral testimony in the context of the written *Miranda* form as introduced into evidence. The trial court instead made its decision on constitutional grounds without reference to the credibility of Born and without reference to the inconsistency in the *Miranda* form. Because appellate courts are not the appropriate forum for analysis of credibility issues or for the resolution of disputed facts, we remand to the trial court to determine the questions of whether Turtura requested counsel or waived his rights. *Id.; Van Cise, Phillips and Goldberg v. Jelen*, 197 Colo. 428, 593 P.2d 973 (1979). If necessary, the court may reopen the hearing to afford Turtura the opportunity to testify.

### IV.

For the reasons stated above, we reverse the trial court's order suppressing Turtura's statements made on April 4 and 5, 1995, and remand for further proceedings consistent with this opinion.