Diane Gay **ABOUZARI**,
Plaintiff–Appellee,

v.

Robert **FOSTER**, Defendant–Appellant.

No. 88CA1336.

Colorado Court of Appeals,
Div. IV.

July 19, 1990.

Gary M. Jackson, Lucy Hojo, Denver, for plaintiff-appellee.

Hall & Evans, William F. Eggert, Denver, for defendant-appellant.

Opinion by Judge HUME.

Defendant, Robert Foster, a Fort Collins, Colorado, police detective, appeals a civil rights damage judgment entered pursuant to a jury verdict in favor of plaintiff, Diane Gay Abouzari. We reverse the judgment and order dismissal of plaintiff's complaint.

On October 29, 1984, a woman representing herself to be Diane G. Abouzari and using a Colorado driver's license issued in that name rented certain welding equipment from a Fort Collins rental shop. One employee for the shop examined the license and recorded its number on the rental contract. Another employee helped the woman load the rental equipment into her van, but did not see the driver's license.

When the rental equipment was not returned within five days after the expiration of the contract period, the rental shop made a theft report to the Fort Collins Police Department. Defendant went to the shop, obtained a copy of the rental contract, and took a written report of the incident from one of the two shop employees who had participated in the rental transaction with the woman.

Using the driver's license number from the contract, defendant obtained from the Colorado Department of Revenue a photograph of plaintiff to whom the license had been issued by that department. He placed that photograph together with five pictures of other women in an array that he then presented to the two employees who had participated in the rental transaction.

The employee who had not seen the license tendered during the rental transaction, after initially asking if defendant had a clearer photograph, chose plaintiff's photograph from the array and positively identified it as that of the woman who had rented the welding equipment. The employee who had examined the license previously, although he remarked that plaintiff's photograph resembled that of the perpetrator, was unable to make a positive identification from the array.

On the basis of this investigation, defendant applied, through the district attorney's office, for a warrant authorizing plaintiff's arrest. Defendant's probable cause affidavit incorporated the employee's written incident report, the photographic array compiled by defendant, and defendant's report describing the compilation, use, and results of the photographic identification process including defendant's characterization of one witness' identification as positive and the other as negative.

A district judge issued an arrest warrant on November 28, 1984, and plaintiff was arrested at her home in Westminster, Colorado, approximately two weeks later. Plaintiff was booked, transported, and detained by the Westminster police and by Larimer County Sheriff's officers for a total of about six hours before being released on bond.

When plaintiff was arrested, she attempted to explain to the Westminster po-

lice that her purse and her driver's license had been lost or stolen, and that she had previously reported the loss to various police authorities. The arresting officers contacted defendant and advised him of these explanations, but nevertheless proceeded with the arrest after defendant told them to do so.

The theft charge was dismissed after a preliminary hearing show-up revealed that no prosecution witness could identify plaintiff as the perpetrator of the theft. Following that dismissal, plaintiff commenced a civil action seeking monetary damages against defendant.

Plaintiff's civil complaint alleged that defendant, acting under color of state law, had deprived her of the right to liberty without probable cause, as guaranteed by the federal constitution, in violation of 42 U.S.C. § 1983 (1982). Plaintiff's complaint also claimed damages under state law for false arrest, false imprisonment, and outrageous conduct.

Defendant's answer denied that his conduct was outrageous or that the arrest was not based upon probable cause. In addition, he asserted the affirmative defense of qualified immunity.

At trial, plaintiff withdrew her state claims based upon false arrest and false imprisonment. The outrageous conduct claim was also dismissed pursuant to defendant's motion after the jury was unable to return a verdict on that claim. The court denied defendant's motions for dismissal, summary judgment, and for directed verdict, and submitted the issues of probable cause and qualified immunity to the jury, resulting in a verdict for the plaintiff on the § 1983 claim.

Thereafter, the court denied defendant's motion for judgment notwithstanding the verdict and entered a judgment for damages as determined by the verdict and for attorney fees as determined by the court. Defendant appeals from that judgment.

Defendant contends that the trial court erred as a matter of law in denying his motions to dismiss, for summary judgment, and for directed verdict. More specifically, defendant contends that the court erred in submitting the qualified immunity defense issue to the jury, rather than determining that issue as a matter of law. We agree.

In *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the United States Supreme Court re-confirmed that police officers are to be accorded qualified immunity from § 1983 damage suits brought by citizens and that the test to be applied is the objective reasonableness standard adopted in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

Under that test, an officer cannot avoid liability by showing only that he believed facts alleged in an affidavit for an arrest warrant to be true. Nor is he entitled to rely solely upon a magistrate's judgment in issuing the warrant. *Malley v. Briggs, supra*. The mere issuance of a warrant is not controlling as to whether probable cause existed to support that issuance. *Giordenello v. United States*, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

Conversely, a police officer is not liable for false arrest simply because the innocence of the suspect is later established or because the suspect is ultimately acquitted or the criminal charges are dismissed.

"A policeman's lot is not so unhappy that he must choose between being charged with a dereliction of duty if he does not arrest when he has probable cause and being mulcted in damages if he does."

*Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

Under the *Harlow* standard adopted in *Malley v. Briggs, supra*, officers will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized. Only if the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the mantle of immunity be lost.

In order to determine whether a police officer's conduct is violative of clearly established laws under the objective reason-

ableness test, a specific examination of the legal principle alleged to be violated is required. It is not sufficient to say that the right to be free from unlawful arrest is well established. *See Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Rather, the right the officer is alleged to have violated must be clearly established in a more particularized and, hence, more relevant sense. Thus, the question is whether a reasonable officer could have believed that probable cause existed in the light of clearly established law *and* based upon the information that the officer in question actually possessed. *See Anderson v. Creighton, supra.*

In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the court held that under the *Harlow, supra,* standard: "[U]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." The court further characterized the issue as an "essentially legal question whether the conduct of which plaintiff complains violated clearly established law."

In *Rakovich v. Wade,* 850 F.2d 1180 (7th Cir.1988), the court reversed a judgment entered on a plaintiff's verdict against police officers, holding that the trial court had erred in submitting the qualified immunity issue to the jury. Noting that qualified immunity "is properly a question of law" to be determined by the trial court rather that an issue of fact for the jury, the appellate court determined the legal issue *de novo* and reversed the judgment without remand to the trial court.

Applying *Anderson v. Creighton, supra,* the *Rakovich* court recognized the need to make specific factual characterizations of the case at issue, and then to compare that factual characterization to the body of law existing at the time of the alleged violation. The *Rakovich* court also noted that the body of existing law need not involve the exact fact pattern presented by the case at hand, but that case law in closely analogous areas is crucial to the determination

whether a reasonably diligent police officer "would have known of the case law, related it to the situation at hand, and molded ... [his] conduct accordingly."

■ Thus, under *Harlow, supra,* and *Anderson, supra,* a two-tier analysis is required in evaluating motions for summary judgment or for directed verdict based upon a qualified immunity defense. The court must first determine whether the alleged conduct sets out a constitutional violation, and secondly, it must determine whether the constitutional standards applicable to the facts of the case were clearly established at the time of the alleged violation. In making the latter evaluation, the court must look to controlling or analogous case law to determine whether a reasonably competent police officer would have known that probable cause was lacking under the facts available to him. *See Rakovich v. Wade, supra.*

Here, the trial court concluded that plaintiff had alleged and demonstrated conduct that was arguably supportive of a constitutional violation in applying for a warrant without probable cause. However, the court failed to determine whether the constitutional standards applicable to the factual circumstances shown were clearly established by then existing case law sufficient to put a reasonably competent police officer on notice that his conduct was constitutionally unlawful.

■ The plaintiff bears the burden of demonstrating that the applicable law was clearly established at the time in question, and the failure to establish a clearly existing constitutional standard derived from authority in a controlling or clearly analogous case does not create a jury question. Rather, such failure of proof will properly result in the dismissal of plaintiff's claims. *See Lutz v. Weld County School District No. 6,* 784 F.2d 340 (10th Cir.1986).

■ Here, defendant knew that plaintiff's driver's license had been used as identification by the perpetrator of a theft; that one eyewitness had identified plaintiff as the perpetrator of the theft; and that, while the other eyewitness had been unable

**1390**

to make a positive identification, he had stated that plaintiff's photograph "resembled" the perpetrator. Those facts, accurately set forth in an affidavit, were sufficient to warrant an officer of reasonable caution to believe that a warrant could properly issue based on probable cause. *See Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *Easton v. City of Boulder,* 776 F.2d 1441 (10th Cir.1985).

Plaintiff has not presented any existing case authority that would cause a reasonable police officer to know or believe that this factual information was constitutionally insufficient to support the issuance of an arrest warrant. A difference of opinion among competent police officers as to the existence of probable cause, in the absence of convincing legal authority clearly establishing the contours of the right asserted by plaintiff, does not create a jury question on the issue of qualified immunity. Indeed, the very existence of such differences of opinion among knowledgeable officers, in the absence of a controlling body of legal authority, should dictate the court's recognition of the validity of a qualified immunity defense. *See Anderson v. Creighton, supra.*

Neither the fact that plaintiff professed her innocence at the time of her arrest nor the fact that another trained officer might have conducted additional investigation before applying for a warrant is sufficient to defeat defendant's entitlement to qualified immunity. *See Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Myers v. Morris,* 810 F.2d 1437 (8th Cir.1987); *Thompson v. Olson,* 798 F.2d 552 (1st Cir.1986).

Based upon the foregoing, we conclude that the trial court erred as a matter of law in refusing to accord defendant qualified immunity under the undisputed facts appearing here.

Accordingly, the judgment entered by the trial court is reversed, and the cause is remanded with directions that plaintiff's complaint be dismissed with prejudice.

CRISWELL and NEY, JJ., concur.