Max **UNGERER**, Plaintiff–Appellant,

v.

David **MOODY**, Defendant–Appellee.

No. 91CA1082.

Colorado Court of Appeals,
Div. III.

Jan. 28, 1993.

As Modified on Denial of Rehearing
March 11, 1993.

Certiorari Granted Oct. 4, 1993.

James Schum, Hotchkiss, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Jane R. Christman, Asst. Atty. Gen., Denver, for defendant-appellee.

Opinion by Judge BRIGGS.

Plaintiff, Max Ungerer, appeals the trial court's dismissal pursuant to C.R.C.P. 12(b)(5) of his complaint against the defendant, David Moody, an officer with the Colorado State Patrol. The complaint asserted claims for false arrest and violation of plaintiff's constitutional rights to be free from unreasonable search and seizure and to due process, brought under 42 U.S.C. § 1983 (1988), and sought exemplary damages. Plaintiff contends the trial court erred in concluding that defendant was immune from suit on all claims. We agree and reverse the trial court's dismissal of plaintiff's complaint, except as to the claim of deprivation of due process.

Because this appeal involves review of a dismissal for failure to state a claim, we must view the allegations of the complaint as true, *Denver & Rio Grande Western R.R. Co. v. Wood,* 28 Colo.App. 534, 476 P.2d 299 (1970), and in the light most favorable to the plaintiff. *Bell v. Arnold,* 175 Colo. 277, 487 P.2d 545 (1971).

The complaint, when so viewed, indicates that plaintiff, a county employee, was operating a road grader and returning to the county shop on a state highway when defendant pulled him over for "impeding traffic." At defendant's request plaintiff gave defendant his driver's license. Defendant did not issue a traffic citation. However, defendant kept the license and instructed plaintiff to proceed to the shop. When they arrived at the shop, defendant contacted plaintiff's supervisor and complained to him about plaintiff. Defendant then returned plaintiff's driver's license and left without issuing a traffic ticket.

After reviewing accounts of the incident, defendant's supervisor determined that defendant's conduct was "in error and in need of improvement," specifically concerning Colorado State Patrol Procedure II(G)(1). That provision states: "Upon the conclusion of a contact with a violator, the driver's license should be returned to the violator."

## I.

Plaintiff contends that the trial court erred in concluding that, as a matter of law, defendant's conduct did not violate clearly established law and that defendant was therefore immune from suit on plaintiff's § 1983 claim. We agree.

Section 1983 provides in relevant part: Every person who, under color of any statute, ... subjects ... any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

Government officials, however, are entitled to qualified immunity from § 1983 damage suits based upon conduct that occurs in the performance of discretionary functions. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This immunity protects police officers from suits for civil damages as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. More concretely, whether a police officer is protected from suit by qualified immunity turns on an objective standard of reasonableness, assessed in light of the legal rules that were "clearly established" at the time the actions were taken. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Unless the plaintiff's allegations state a claim of violating clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

In addressing a motion for dismissal based on qualified immunity, the court must first determine whether the alleged conduct sets out a constitutional violation, and secondly, whether the constitutional standards applicable to the facts alleged were clearly established at the time of the claimed violation. *Abouzari v. Foster,* 795 P.2d 1386 (Colo.App.1990). Put another way, the contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right. *Hilliard v. City & County of Denver*, 930 F.2d 1516 (10th Cir.1991); *National Camera, Inc. v. Sanchez*, 832 P.2d 960 (Colo.App.1991).

In the typical case, the sole question is whether an admitted search or seizure was based on probable cause. *See, e.g., Anderson v. Creighton, supra.* Here, however, defendant contends that merely holding plaintiff's driver's license while he continued on to the shop was not a constitutional violation because it did not constitute a seizure or an arrest.

■ This raises the question whether the test of objective reasonableness applies not only to the existence of justification for any restraint on freedom, but also to the determination of whether the police officer's actions constitute a seizure or arrest. We conclude that it does.

When government officials abuse their offices, 'action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees.' ... On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.... Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.

*Anderson v. Creighton*, 483 U.S. at 638, 107 S.Ct. at 3038, 97 L.Ed.2d at 529–530.

This accommodation would be undermined if police officers were required to defend themselves in lawsuits and be subject to liability when the law was not clearly established that their actions constituted a seizure. Therefore, applying the constitutional standards as articulated at the time of this incident, we must determine whether the complaint sufficiently alleged facts indicating that a reasonable police officer in defendant's position would have realized his actions constituted a seizure in the constitutional sense and that those actions were without justification.

### A.

■ Defendant does not contest, and we agree, that his initial stop of plaintiff constituted a seizure. *See Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980) (fn. 3); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Defendant nevertheless argues that his actions after the initial stop in keeping plaintiff's license and ordering him to proceed to the county shop did not constitute a continuing seizure because, under §§ 42–2–101 and 42–2–102, C.R.S. (1984 Repl.Vol. 17), plaintiff could lawfully operate the road grader without his driver's license. We are not persuaded.

At the time of this incident, the law was clearly established that whether a person has been seized in the constitutional sense depends not on the officer's subjective state of mind, but rather on an objective standard of whether a reasonable person in that situation would have believed that his freedom of action was restrained in any significant way. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *People v. Trujillo*, 784 P.2d 788 (Colo.1990); *see also People v. Tottenhoff*, 691 P.2d 340 (Colo.1984); *People v. Pancoast*, 659 P.2d 1348 (Colo.1982).

The law was also clearly established at the time that the perceived restraint could arise either from actual physical force or from a show of authority. *Immigration & Naturalization Service v. Delgado*, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *People v. Carillo–Montes*, 796 P.2d 970 (Colo.1990).

When this incident occurred, retaining a license or other similar piece of personal property was an established factor in determining whether a reasonable person would consider themselves free to leave. *See United States v. Gonzalez*, 763 F.2d 1127 (10th Cir.1985); *United States v. Waksal*,

709 F.2d 653 (11th Cir.1983); *United States v. Miller*, 589 F.2d 1117 (1st Cir.1978).

Also, an officer directing a person to another location without informing him that he was free to ignore the "request" was considered at the time of this incident to be a persuasive factor in ascertaining that the person could reasonably believe he was not free to leave. *See United States v. Gonzalez, supra; United States v. Waksal, supra; People v. Tottenhoff, supra,* and cases cited therein.

Further, an apparently accommodating demeanor on the part of the officer does not necessarily indicate a lack of restraint. *See United States v. Gonzalez, supra; United States v. Waksal, supra.*

Under the circumstances alleged in the complaint, plaintiff reasonably could have believed that, because defendant had retained his license and instructed him to go directly to the shop, there could be other consequences if he did not follow those instructions and that the only way to retrieve the license, and thus go anywhere else, was to comply with defendant's instruction. *See United States v. Gonzalez, supra.* As the Fifth Circuit had observed prior to defendant's actions: "Only exceptionally clear evidence of consent should overcome a presumption that a person requested to accompany an agent to an office no longer would feel free to leave." *United States v. Berry,* 670 F.2d 583, 598 (5th Cir.1982).

"[T]he body of existing law need not involve the exact fact pattern presented by the case at hand, but ... case law in closely analogous areas is crucial to the determination whether a reasonably diligent police officer 'would have known of the case law, related it to the situation at hand, and molded ... [his] conduct accordingly.'" *Abouzari v. Foster, supra,* at 1389. Here, taking the facts alleged as true and in the light most favorable to plaintiff, we conclude that defendant should have realized a reasonable person in plaintiff's position would have considered himself deprived of his freedom of action in a significant way and, thus, should have realized his actions constituted a seizure.

### B.

Since under the facts as alleged, defendant should have realized his actions constituted a seizure in the constitutional sense, the question becomes whether plaintiff has also alleged facts sufficient to support a claim that a reasonable officer would have realized that his actions were not justified and thus constituted an unreasonable seizure in violation of the Fourth Amendment. We conclude that he has.

Plaintiff argues that the law regarding unreasonable seizure was clearly established at the time these events occurred. However, the right must be established in a more particularized and, hence, more relevant sense. The question is whether a reasonable officer in defendant's position at the time would have believed the continuing restraint on plaintiff's freedom after the initial stop was justified, in light of clearly established law *and* the information possessed. *Anderson v. Creighton, supra; Abouzari v. Foster, supra.*

The law was clearly established at the time of this incident that a police officer may detain a person without having probable cause to arrest only under narrowly defined circumstances, *Terry v. Ohio, supra,* and that the scope and character of an intrusion by a police officer into a citizen's affairs must be carefully tailored to its underlying justification. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *People v. Lewis,* 659 P.2d 676 (Colo. 1983).

If plaintiff had been impeding traffic, his conduct would have been in violation of § 42-4-1003, C.R.S. (1984 Repl.Vol. 17). Because this is a "class A traffic infraction," defendant would have been authorized to stop plaintiff and issue a "penalty assessment notice," *see* § 16-3-103(1), C.R.S. (1986 Repl.Vol. 8A), but *not* authorized to arrest plaintiff for such a violation. *See* §§ 42-4-1501(4)(a) and 42-4-1501(2)(a)(I), C.R.S. (1984 Repl.Vol. 17); *People v. Meredith,* 763 P.2d 562 (Colo. 1988); *People v. Bischofberger,* 724 P.2d

660 (Colo.1986); *see also United States v. Gonzalez, supra.*

Defendant has therefore not argued, and we agree, that his contact with plaintiff beyond the initial stop was a valid continuation of the traffic stop. "An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. . . . When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning." *United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988). Even the State Patrol's own internal policies, of which defendant was presumably aware, provided that plaintiff's driver's license should have been returned to him at the conclusion of the initial stop for impeding traffic.

There is likewise no indication that defendant had an articulable suspicion that plaintiff had committed or was about to commit an offense, aside from the minor traffic infraction. Thus, the law was clearly established that, at the conclusion of the initial stop for impeding traffic, there was no basis for further interference with plaintiff's freedom. *See United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *People v. Carillo-Montes, supra; People v. Lidgren,* 739 P.2d 895 (Colo.App.1987).

The clear lack of justification for defendant's actions after the initial stop as alleged in the complaint distinguishes this case from others such as *Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991). There, the lawfulness of the arrest of the plaintiff's companions was not challenged. The initial stop continued while the deputy sheriff waited for backup assistance and then searched the vehicle. The law was not clearly established that these actions were beyond the valid scope of the stop, nor was there any "aggravating" conduct which made plaintiff's seizure with her companions clearly unreasonable. In contrast, plaintiff here has alleged facts establishing that defendant's actions were clearly beyond the valid scope of this traffic stop. Thus, it is not necessary that defendant's conduct be in some separate sense "aggravated."

The thrust of § 1983 is to protect against the misuse of power by government officials. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Complaints filed under the Civil Rights Act are to be construed liberally. And, to state a claim for relief under § 1983, a complainant need allege only (1) that some person deprived complainant of a right, privilege, or immunity secured by the federal constitution; and (2) that such person acted under color of state law. *International Society For Krishna Consciousness, Inc. v. Colorado State Fair,* 673 P.2d 368 (Colo. 1983).

A complaint should not be dismissed unless it appears that the nonmoving party is entitled to no relief under any statement of facts which may be proved in support of the claims. *People ex rel. Kinsey v. Sumner,* 34 Colo.App. 61, 525 P.2d 512 (1974). Taking plaintiff's allegations as true and considering them in the light most favorable to plaintiff, we cannot say that a reasonable police officer in defendant's position would not have understood that his ongoing intrusion into plaintiff's affairs constituted a seizure and was unjustified. Under these circumstances, plaintiff's complaint sufficiently states a claim under 42 U.S.C. § 1983.

## II.

Plaintiff next contends that the court erred in concluding that defendant is entitled to immunity from plaintiff's claim of false arrest under § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). We agree.

██ At the outset, we note that the elements of claims of false arrest and false imprisonment are the same. The only difference is whether there is a claim of legal justification, which is an affirmative defense. *See Goodboe v. Gabriella,* 663 P.2d 1051 (Colo.App.1983); *Enright v. Groves,* 39 Colo.App. 39, 560 P.2d 851 (Colo.App. 1977); *CJI–Civ.3d* 21:1 (1989).

As a result, as with a claim under § 1983, in order to state a claim of false arrest, it is not necessary to allege that defendant's conduct constituted an arrest in the traditional sense of being the initial stage of a criminal prosecution. Rather, it is sufficient that the defendant intended to restrict plaintiff's freedom of movement; that plaintiff's freedom of movement was restricted for a period of time, however short, either directly or indirectly by an act of defendant; and that plaintiff was aware that his freedom of movement was restricted. *See Goodboe v. Gabriella, supra; CJI–Civ.3d* 21:1 (1989).

Section 24–10–118(2), C.R.S. (1988 Repl.Vol. 10A) provides generally that a public employee is immune from suit on any claim that lies or could lie in tort, unless the act or omission causing such injury was willful and wanton. *See Leake v. Cain,* 720 P.2d 152 (Colo.1986); *Patel v. Thomas,* 793 P.2d 632 (Colo.App.1990). Plaintiff contends that his complaint sufficiently stated such a claim. We agree.

The phrase "willful and wanton" is not defined. Because the policy considerations are similar, we conclude that the phrase is to be defined as in the exemplary damages statute, § 13–21–102(1)(b), C.R.S. (1987 Repl.Vol. 6A). *Cf. Foster v. Redding,* 97 Colo. 4, 45 P.2d 940 (1935) (no material difference between phrase "willful and wanton" as used in guest statute and phrase "wanton and reckless" as used in exemplary damages statute).

Unless the complaint discloses that plaintiff could prove no set of facts to support a finding that defendant acted willfully and wantonly, dismissal of the common law claim based on the Governmental Immunity Act cannot be sustained. *See Patel v. Thomas, supra.*

Plaintiff's allegations, taken as true, demonstrate a continuing abuse of authority in an obviously unnecessary situation. While neither the infringement on plaintiff's freedom nor the resulting harm may appear substantial, plaintiff has alleged sufficient facts in his complaint, viewed in the light most favorable to plaintiff, to establish a claim that defendant realized his conduct was harmful to plaintiff and was undertaken heedlessly or recklessly, without regard to plaintiff's rights. *See* § 13–21–102(1)(b), C.R.S. (1987 Repl. Vol. 6A).

We therefore conclude that plaintiff has properly stated a claim for false arrest that is not barred by the Governmental Immunity Act. *See Leake v. Cain, supra; Patel v. Thomas, supra.*

## III.

Plaintiff's final contention is that his complaint also states a cause of action under § 1983 for deprivation of his Fourteenth Amendment right to due process. We disagree.

Plaintiff does not specify whether he alleges a violation of procedural or substantive due process and has cited no authority for his contention. The argument is simply that defendant gave plaintiff no notice or opportunity to challenge defendant's action and that both the Colorado and United States constitutions require due process before a person is tried, convicted, and punished.

We discern these arguments as alleging a procedural due process violation. *See Weber v. Village of Hanover Park,* 768 F.Supp. 630 (N.D.Ill.1991); *cf. Mosher v. City of Lakewood,* 807 P.2d 1235 (Colo. App.1991). However, "the constitutional requirements of procedural due process do not mandate that a state engage in the impossible task of conducting a *pre* deprivation hearing before an unanticipated deprivation occurs." *Mosher v. City of Lakewood, supra,* at 1240. No cause of action exists under § 1983 so long as the state provides an adequate postdeprivation remedy. *See Keelan v. Joint School District 28J,* 765 P.2d 1062 (Colo.App.1988).

Plaintiff has not alleged that his state law remedy for false arrest is inadequate. We have determined that his claim for false arrest is not barred by governmental immunity. In these circumstances, plaintiff has failed to state a claim for violation

to his right to procedural due process. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

The judgment is reversed, except as to the claim of deprivation of due process, and the cause is remanded for further proceedings.

CRISWELL, J., concurs.

ROTHENBERG, J., concurs in part and dissents in part.

Judge ROTHENBERG concurring in part and dissenting in part.

I concur with part III of the majority opinion holding that the plaintiff has failed to state a claim under 42 U.S.C. § 1983 for deprivation of his Fourteenth Amendment right to due process. However, because I also conclude that defendant was entitled to dismissal based upon qualified immunity, I respectfully dissent from the reversal of the judgment.

## I.

Plaintiff's facts, taken as true, are these. On the date in question, plaintiff, a county employee, was "returning to the county shop" in a road grader, when defendant Moody, a state trooper, pulled him over for impeding traffic. Defendant requested and received plaintiff's driver's license, but he did not issue a citation and did not return the license. Instead, he instructed plaintiff to proceed in the road grader to plaintiff's shop. At the shop, defendant complained to plaintiff's supervisor about the plaintiff and then returned plaintiff's license without issuing a traffic ticket.

Plaintiff's complaint alleged, *inter alia,* that: (1) defendant's action violated state patrol policies and procedures; (2) defendant restricted plaintiff's freedom of movement by ordering him to return to the county shop and by retaining plaintiff's driver's license until he complied; (3) defendant's actions constitute a false arrest of plaintiff; and (4) defendant violated plaintiff's "constitutional rights ... to be free from unreasonable search and seizure and his right to due process."

## II.

In order to maintain a cause of action under 42 U.S.C. § 1983, plaintiff must allege not only that the violator acted under color of state law, but also that the violator deprived plaintiff of a right, privilege, or immunity secured by the federal constitution. *See International Society for Krishna Consciousness, Inc. v. Colorado State Fair,* 673 P.2d 368 (Colo.1983).

The Civil Rights Act was not intended to create a body of general federal tort law. *Lessman v. McCormick,* 591 F.2d 605 (10th Cir.1979). Cases involving cognizable claims under § 1983 typically involve claims of false arrest, false imprisonment, detention without warrant or arraignment, harsh treatment of detained individuals, or other improper behavior by government officials. However, as stated in *Wells v. Ward,* 470 F.2d 1185, 1187 (10th Cir.1972):

> [E]valuations of rights and duties under § 1983, arising as they do under the Fourteenth Amendment to the Constitution of the United States, are often different from counterpart common law actions which arise under state substantive law.... For example, under state common law ... the slightest interference with personal liberty is a false imprisonment. It does not follow that all such invasions ... serve to activate remedies under [§ 1983].

Although more recent cases unquestionably have widened the scope of § 1983 by broadly construing its language, the plaintiff nevertheless is still required to assert the violation of "rights, privileges, or immunities secured by the Constitution and laws." *See Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). *See also Soldal v. Cook County, Ill.,* —— U.S. ——, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)).

This distinction between state tort claims and § 1983 claims is apparent throughout the case law. *Compare Courson v. McMillian,* 939 F.2d 1479 (11th Cir.1991) (despite "disappointing conduct by a law enforcement officer and bad judgment," no

§ 1983 claim where woman passenger in motor vehicle was detained, required to lie on ground while officer pointed shotgun at her, and, after arrest of her companions, was abandoned alone at the side of a highway late at night without transportation home); *Braley v. City of Pontiac,* 906 F.2d 220 (6th Cir.1990) (no cognizable § 1983 claim where defendant was arrested for refusing to produce driver's license, taken to police station, and held overnight); *Eischen v. Minnehaha County,* 363 N.W.2d 199 (S.D.1985); (where sheriff's department arrested plaintiff for failure to pay traffic fine and held him in jail approximately one hour and five minutes, deprivation of liberty was not of such constitutional magnitude as to warrant cause of action under § 1983); *with Rankin v. Colman,* 476 So.2d 234 (Fla.Dist.Ct.App.1985) (cause of action stated under § 1983 where woman complainant alleged that she was subjected to a strip and body cavity search after arrest for minor traffic violation); and *Lessman v. McCormick, supra* (cause of action stated under § 1983 where complainant alleged that real purpose of her arrest for overtime parking was to intimidate complainant into paying a bank debt).

In addition, in an action premised on § 1983, government officials are entitled to qualified immunity from suit if they performed their duty with a reasonable good faith belief in the propriety of their actions. *See Espinoza v. O'Dell,* 633 P.2d 455 (Colo. 1981).

And, once a defendant raises a qualified immunity defense, the plaintiff assumes the burden of showing that the defendant violated a clearly established constitutional or statutory right of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Martinez v. Harper,* 802 P.2d 1185 (Colo.App.1990). In my view, plaintiff failed to meet that burden here.

## III.

### A.

#### ARREST

Plaintiff contends on appeal that he was falsely arrested and that the law regarding false arrest was clearly established at the time of the alleged violations. I agree that a false arrest is a constitutional violation, but I conclude that plaintiff was never arrested.

An ordinary traffic stop is not a custodial arrest. It is a limited seizure within the meaning of the Fourth Amendment in the nature of a *"Terry* stop." *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). *People v. Andrews,* 173 Colo. 510, 484 P.2d 1207 (1971). Here, since the initial stop and the requirement that plaintiff display his driver's license were lawful and necessary in carrying out Colorado statutes regulating motor vehicles, it in no way violated plaintiff's right to be free from false arrest or unreasonable search and seizure. *See United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Recalde,* 761 F.2d 1448 (10th Cir.1985).

Nevertheless, plaintiff contends that the state trooper's action in not immediately returning his driver's license but instead requiring him, still in his road grader, to follow him back to the county shop and thereafter verbally complaining to plaintiff's supervisor about his driving, converted this traffic stop into an arrest. I disagree.

In *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), the United States Supreme Court reviewed investigative stops and specifically rejected the contention that the length of detention alone converted an automobile stop into an arrest. The Court noted that a number of factors were relevant including whether the defendant was transported unwillingly to a police station and whether he was subjected to custodial interrogation. *See Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

Similarly, in *People v. Tottenhoff,* 691 P.2d 340, 343 (Colo.1984), our supreme court recognized that: "[A]lthough an arrest constitutes a 'seizure' of the person within the constitutional sense of that

term, not all forms of 'seizure' are necessarily arrests." The court emphasized that the difference between a limited seizure of the person and an arrest is the "duration and degree of intrusion resulting from the interference with the person's freedom of movement."

The court in *Tottenhoff* applied a "reasonable person" standard: "whether under the totality of circumstances reasonable persons in the situation of the defendant would have believed that they were being arrested, rather than merely temporarily detained...." *See People v. Tottenhoff, supra*, at 344. Thus, in *Tottenhoff*, the court concluded that the defendant *was* under arrest because the police officer told defendant to follow the officer to the police station and further said, "[Y]ou're now under arrest."

In *United States v. Recalde, supra*, the U.S. Court of Appeals for the 10th Circuit analyzed at length a factual situation in which a routine traffic stop also became an arrest. Recalde was stopped for speeding and issued a ticket, but after the officers suspected the presence of drugs, Recalde was told he would have to accompany the officers to the police station. Recalde and the officers then proceeded five miles to the police station with Recalde's car sandwiched between the police cruisers, during which time the officers kept his speeding ticket and driver's license. At the police station, the officers placed the defendant in a small room for further investigation and questioning. Based upon the totality of these circumstances, the court found an arrest had occurred.

In sharp contrast to *Recalde, Tottenhoff*, and *Dunaway*, plaintiff here was never placed in the state trooper's car, but remained with his vehicle. He was not taken to a police station. Rather, he was told to drive back to his own place of business where he was going anyway. And, plaintiff was not subjected to custodial interrogation, detained for an unreasonable period of time, nor told he was under arrest as occurred in *Tottenhoff*. In fact, this plaintiff was never even issued a traffic citation, much less arrested. *See Courson v.*

*McMillian, supra* (ordering plaintiff to lie on the ground and pointing gun at her did not constitute arrest); *United States v. Roper*, 702 F.2d 984 (11th Cir.1983) (investigatory stop does not become arrest merely because officer orders occupants of car out of vehicle and points gun at them).

I respectfully submit that reasonable persons in plaintiff's position would not have considered themselves under arrest. A traffic stop is an inconvenient but commonplace type of detention and drivers are well aware that they are not "free to go." Nevertheless, absent special circumstances not present here, even a relatively lengthy detention for a traffic offense does not constitute an arrest. Finally, although I agree that reasonable persons probably would have felt some coercion from the trooper's act of retaining the driver's license during the drive to the plaintiff's office, I do not believe that average, reasonable motorists would have concluded that they were under arrest merely because the officer held their license.

In sum, since I conclude that plaintiff was never arrested, I necessarily conclude that he cannot maintain a state or federal action for false arrest.

### B.

### SEIZURE

Plaintiff also has alleged that defendant violated his constitutional right to be free from unreasonable search and seizure. His civil rights claim thus turns upon whether the defendant's actions when he "restricted plaintiff's freedom of movement by ordering him to return to the county shop and by retaining plaintiff's driver's license until he complied" violated a clearly established constitutional right. I conclude, as did the trial court, that plaintiff failed to meet his burden that such a clearly established right was violated.

Personal encounters between law enforcement officers and citizens are "seizures" when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *People v. Tottenhoff, supra.* Thus, the initial traffic stop here constituted a "seizure" of plaintiff. I also agree that the "seizure" continued while plaintiff was required to proceed to plaintiff's shop. This however does not end the inquiry.

In *Brower v. County of Inyo,* 489 U.S. 593, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989), a § 1983 action was brought by the heirs of a driver who died when he hit a roadblock constructed by police. The United States Supreme Court held that the police had effected a "seizure" by establishing and concealing the roadblock but, importantly, the court added:

> Seizure alone is not enough for § 1983 liability; *the seizure must be unreasonable. Brower v. County of Inyo,* 489 U.S. at 599, 103 L.Ed.2d at 637, 109 S.Ct. at 1382 (emphasis added).

The Court thus remanded the case back to the district court for a determination of whether the roadblock effected an unreasonable seizure. *See also Soldal v. Cook County, Ill., supra.*

There is a dearth of § 1983 cases arising solely from an allegation of an unreasonable seizure as opposed to an unreasonable search or false arrest. In fact, plaintiff cites only case law involving § 1983 actions based upon arrests.

In *Courson v. McMillian, supra,* a § 1983 action arising from a seizure alone, plaintiff was a woman passenger of a car stopped for a traffic violation. Although plaintiff was not arrested, she was forced to exit from the car, to lie down at gunpoint, and, after her companions were arrested, she was left on the highway at night by the police without a ride home. She suffered emotional but no physical injuries as a result of the incident. She sued a sheriff and deputy for violation of constitutional rights including unlawful seizure, excessive force, and detention.

Following a thorough and erudite analysis of the law regarding seizure and qualified immunity, the court ruled that, although the plaintiff was "seized" within the meaning of the Fourth and Fourteenth Amendments, the seizure was reasonable and plaintiff had failed to carry her burden of showing the officer's conduct had violated clearly established law. The court described the officers' conduct as "disappointing" and did not condone it, but concluded that the officer's abandonment did not constitute the violation of a constitutional right.

I am unaware of any authority in any jurisdiction contradicting the holding in *Courson. Compare Courson v. McMillian, supra, with United States v. Waksal,* 709 F.2d 653 (11th Cir.1983) (defendant was subjected to unreasonable airport seizure because he allegedly fit "drug courier" profile; § 1983 not involved); *United States v. Elsoffer,* 671 F.2d 1294 (11th Cir.1982) (seizure at airport did not violate defendant's Fourth Amendment rights where officers saw unusual bulge suggesting drugs; § 1983 not involved); and *United States v. Miller,* 589 F.2d 1117 (1st Cir.1978) (drug case following search of abandoned yacht; § 1983 not involved).

Here, although this defendant may have used poor judgment in not simply returning plaintiff's driver's license to him, I conclude that plaintiff's allegations, viewed in the light most favorable to him, fail to describe an "unreasonable" seizure as is required to sustain a § 1983 action. To the contrary, the seizure alleged by plaintiff here is considerably less aggravated than the one found reasonable by the court in *Courson.* Again, I am unaware of any jurisdiction in the country that has found the existence of a § 1983 action under similar facts, and I cannot see how the result reached here furthers the noble purpose underlying the federal civil rights act.

In summary, given these facts and the dearth of published authority on the parameters of a lawful "seizure" not resulting in an arrest, I conclude that plaintiff has failed to meet his burden of showing that defendant's conduct violated clearly established law. *See Courson v. McMillian, supra.*

Accordingly, I would hold that the trial court correctly ruled the defendant here

was entitled to qualified immunity, *see Martinez v. Harper, supra; Abouzari v. Foster*, 795 P.2d 1386 (Colo.App.1990), and I would affirm the judgment.