INTRODUCTION
The Department of Transportation recognizes that the safe and efficient transportation of the travelling public is dependent on the removal of accident remnants. The potential lack of protection from liability hinders the implementation of a comprehensive incident management plan.
This opinion analyzes the liability issues confronting various state agencies and their personnel while removing vehicles, cargo and debris from the public highways.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Do Colorado State Patrol Officers and other law enforcement agencies have the authority, pursuant to § 42-4-1601 through 1603, C.R.S. (1993) and § 24-33.5-212, C.R.S. (1988), to clear the roadway of vehicles (i.e., auto, trucks, etc.), and cargo and debris from the lanes of travel and roadway shoulder, when such an obstruction, in the opinion of the officer, is deemed a hazard to the motorists traveling the roadway?
 The Colorado State Patrol, sheriffs, undersheriffs, police officers, marshalls, and agents of the Colorado Bureau of Investigation have the authority to remove motor vehicles from the highway right-of-way, pursuant to § 42-4-1603, C.R.S. (1993). This authority is limited to the removal of motor vehicles and does not give the law enforcement agencies the authority to remove vehicles, such as trailers, or cargo and debris. Section 24-33.5-212(1)(f), C.R.S. (1988) gives authority to the Colorado State Patrol to remove vehicles, cargo, and debris, if such authority is deemed necessary to effectively regulate traffic. In addition, municipalities have the authority to direct local law enforcement agencies to remove vehicles, cargo, and debris that obstruct or encroach on municipal streets. Section 31-15-702(1)(a)(I), C.R.S. (1986).
2. Can the term "motor vehicle," in §§ 42-4-1601 through 1603, C.R.S. (1993), be interpreted to include, not just the motorized vehicle itself, but also the materialcontents or spilled cargo that was contained within the motorized vehicle prior to the accident?
 The term "motor vehicle," as used in §§ 42-4-1601
through 1603, C.R.S. (1993) and as defined in § 42-1-102(46) (1993), does not include the material contents or spilled cargo that had been contained within the motorized vehicle prior to the accident.
3. Section 24-33.5-212, C.R.S. (1988) conveys powers only to the Colorado State Patrol. Do other local law enforcement agencies, such as police, fire officials, etc., have similar powers in their local jurisdictions?
 The governing body of each municipality has the authority to remove motor vehicles, cargo, and any other obstruction from the streets within the jurisdiction of the municipality, and to delegate that authority to municipal law enforcement agencies. Section 31-15-702(1)(a)(I), C.R.S. (1986).
4. a. Are Colorado Department of Transportation (CDOT) personnel, and other parties assisting law enforcement officers in the removal of vehicles and cargo from the highway right-of-way, immune from liability for damage to said motor vehicles and/or the cargo, if they are performing this duty at the request of a law enforcement officer?
4. b. If CDOT personnel or other parties provide assistance in clearing the highway right-of-way, will they be held liable for secondary property damage to the disabled motor vehicles (i.e., autos, trucks, etc.) and their contents incurred due to the removal of said obstruction? Will they be held liable for performing this duty, if they knew that damage would likely occur when the vehicle and/or its cargo are removed?
 a. b. CDOT and its personnel are absolutely immune from liability for damages caused by removing motor vehicles from the highway right-of-way, if acting at the direction of the specific law enforcement officers enumerated in § 42-4-1603, C.R.S. (1993). CDOT employees could become personally liable for damage caused while removing non-motorized vehicles and cargo from the highway right-of-way, whether or not at the direction of the law enforcement officer(s), if the employees act outside the scope of employment or with a willful and wanton disregard for the property rights of others.
 ANALYSIS
 QUESTION 1: Do Colorado State Patrol Officers and other law enforcement agencies have the authority, pursuant to § 42-4-1601 through 1603, C.R.S. (1993) and §24-33.5-212, C.R.S. (1988), to clear the roadway of vehicles (i.e., auto, trucks, etc.), and cargo and debris from the lanes of travel and roadway shoulder, when such an obstruction, in the opinion of the officer, is deemed a hazard to the motorists traveling the roadway?
Discussion: Section 42-4-1603(2), C.R.S. (1993) provides:
 [W]henever any sheriff, undersheriff, deputy sheriff, police officer, marshall, Colorado State Patrol officer, or agent of the Colorado Bureau of Investigation finds a motor vehicle, attended or unattended, standing upon any portion of a highway right-of-way in such a manner as to constitute an obstruction to traffic or proper highway maintenance, such officer is authorized to cause the motor vehicle to be moved to eliminate any such obstruction; and neither the officer nor anyone acting under his direction shall be liable for any damage to such motor vehicle occasioned by such removal.
This provision grants authority to the Colorado State Patrol, sheriffs, undersheriffs, deputy sheriffs, police officers, marshalls and agents of the Colorado Bureau of Investigation to remove motor vehicles from the public right-of-way when the motor vehicle constitutes an obstruction to traffic or proper highway maintenance.[1] The law enforcement officers listed in § 42-4-1603(2), C.R.S. (1993) must make the determination that the motor vehicle constitutes an obstruction to traffic or proper highway maintenance.[2]
Section 42-4-1603, C.R.S. (1993) does not give the Colorado State Patrol, or any other law enforcement agency, the authority to remove vehicles, cargo or debris. Vehicle
and motor vehicle are not synonymous. Motorvehicle is defined as "any self-propelled vehicle which is designed primarily for travel on the public highways and which is generally and commonly used to transport persons, and property over the public highways. . . ." Section 42-1-102(46), C.R.S. (1993). Vehicle is defined as "any device which is capable of moving itself or of being moved, from place to place upon wheels or endless tracks." Section 42-1-102(88), C.R.S. (1993). Unless the vehicle is self-propelled (thus becoming a motor vehicle) it cannot be removed, pursuant to the authority granted in § 42-4-1603, C.R.S. (1993).
Section 24-33.5-212(1)(f), C.R.S. (1988) provides that:
 [A]n officer of the Colorado state patrol has all the powers of any peace officer to direct, control, and regulate all traffic at any intersection or any portion of streets or highways or elsewhere in this state when it is deemed necessary in the interest of public safety and for the safe and speedy movement of persons and property.
Although there are no cases interpreting this statute, it is arguable that the removal of cargo and debris is necessary to direct, control, and regulate traffic. Whether the removal is necessary will depend upon the factual circumstances of each incident.
In addition to the grants of authority provided in the two statutes discussed above, local ordinances may provide authority to local law enforcement agencies to remove motor vehicles, cargo, and debris in their respective jurisdictions. Sections31-15-702(1)(a)(I), C.R.S. (1986) and 30-15-401(h), C.R.S. (1986).See Discussion of Question 3, infra.
SUMMARY: The law enforcement agencies presented in § 42-4-1603, C.R.S. (1993) have the authority to removemotor vehicles. This authority does not include other types of vehicles, cargo or debris. Municipalities have the authority to direct local law enforcement agencies to remove any obstruction or encroachment on municipal streets. Section31-15-702(1)(a)(I), C.R.S. (1986). See Question 3 for further analysis concerning the authority of local law enforcement agencies.
QUESTION 2: Can the term "motor vehicle" in §§42-4-1601 through 1603, C.R.S. (1993) be interpreted to include, not just the motorized vehicle itself, but also the materialcontents or spilled cargo that was contained within the motorized vehicle prior to the accident?
Discussion: The term "motor vehicle," as used in §§ 42-4-1601 through 1603, C.R.S. (1993) and as defined in § 42-1-102(46) (1993), does not include the material contents or spilled cargo that had been contained within the motorized vehicle prior to the accident.
The terms motor vehicle and vehicle are defined at § 42-1-102(46) and (88), C.R.S. (1993), respectively. Although the two terms are commonly used interchangeably, they have distinct meanings. "Motor Vehicle" is defined narrowly to include:
 "Motor vehicle" means any self-propelled vehicle which is designed primarily for travel on the public highways and which is generally and commonly used to transport persons and property over the public highways, but the term does not include motorized bicycles as defined in paragraph (b) of subsection (47) of this section or vehicles moved solely by human power. For the purposes of the offenses described in sections 42-4-1201 to 42-4-1203 for farm tractors operated on streets and highways, "motor vehicle" includes a farm tractor which is not otherwise classified as a motor vehicle.
Section 42-1-102(46), C.R.S. (1993). The authority granted in § 42-4-1603, C.R.S. (1993) applies specifically to motor vehicles, and does not include cargo or debris spilled upon the highway right-of-way from a motor vehicle, or more likely, from a vehicle or trailer.
"Vehicle" is defined as:
 "Vehicle" means any device which is capable of moving itself, or of being moved, from place to place upon wheels or endless tracks. "Vehicle" includes any bicycle, but such term does not include any farm tractor or any implement of husbandry designed primarily or exclusively for use and used in agricultural operations, or any device moved by muscular power or moved exclusively over stationary rails or tracks or designed to move primarily through the air.
Section 42-1-102(88), C.R.S. (1993).[3]
Thus, the term "motor vehicle" does not include non-motorized vehicles, such as trailers, and would not include the contents of vehicles or motor vehicles, whether the contents are spilled on the highway right-of-way or are contained in the vehicle.
Statutory words and phrases should be given their ordinary meaning, unless they have acquired a technical meaning through legislative definition or judicial construction. Parrish v.Lamm, 758 P.2d 1356, 1368 (Colo. 1988). See also
§ 2-4-101, C.R.S. (1980). In construing a statute, the courts are bound by § 2-4-101 et seq., C.R.S. (1980) which requires construction according to common usage. If the statute is plain and its meaning clear, it must be applied as written.Dent v. Amoco Production Co., 800 P.2d 1324, 1326
(Colo.App. 1990) cert. denied, (Colo. Nov. 19, 1990). Further, the General Assembly is presumed to have inserted every part of a statute for a purpose, and to have intended that each part be given effect. Barrow's Estate v. Edwards,594 P.2d 1064, 1065 (Colo.App. 1979).
Based upon the rules of statutory construction cited above, the General Assembly intended to give absolute immunity to State Patrol Officers and their agents for the removal of motorvehicles and not vehicles, including trailers or their cargo or spilled contents. When the General Assembly intended to give authority to remove all obstructions from a street or highway right-of-way, it did so. See, §31-15-702(1)(a)(I), C.R.S. (1986). Since the General Assembly limited the authority in § 42-4-1603, C.R.S. (1993) to motor vehicles, it must be presumed that the legislature did not intend for this statute to provide authority to remove other obstructions from the highway right-of-way. As discussed in Question 1, the state patrol has authority to remove obstructions from state highways where it is deemed necessary in the interest of public safety. § 24-33.5-212(1)(f), C.R.S. (1988). See also, Question 1 for discussion of statutory authority granted to local entities to remove obstructions from roads.
SUMMARY: The term "motor vehicle", as defined by statute, does not include the material contents or spilled cargo contained within the motor vehicle prior to the accident.See Question 4 for analysis of immunity for state employees removing vehicles, cargo and debris.
QUESTION 3: Section 24-33.5-212, C.R.S. (1988) conveys powers only to the Colorado State Patrol. Do other local law enforcement agencies, such as police, fire officials, etc., have similar powers in their local jurisdictions?
Discussion: Section 31-15-702(1)(a)(I), C.R.S. (1986) gives power to municipalities to regulate the streets within the local jurisdiction. Section 31-15-702(1)(a)(I) provides that the governing body of each municipality has the power to "[l]ay out, establish, open, widen, extend, grade, pave, or otherwise improve streets,. . . . [and] to regulate the use of the same; to prevent and remove encroachments or obstructions upon the same. . . ."
This statute gives the governing body of each municipality the regulatory authority to delegate to police and fire officials the power to remove obstructions (which would include motor vehicles, vehicles, cargo, and debris) from the municipality's streets. The governing body of each municipality may exercise its authority by passing an ordinance giving the local law enforcement officers the authority to remove obstructions from the streets.[4]
Each local ordinance should be evaluated to determine whether a specific municipality has delegated the authority to remove obstructions from local streets as part of its regulatory authority granted in § 31-15-702(1)(a)(I), C.R.S. (1986) and, if so, to whom that authority was delegated. No similar statutory authority exists giving counties the power to remove encroachments or obstructions on county roads or streets.
SUMMARY: Each municipality's governing body has the authority to remove any obstruction from the streets within the municipality's jurisdiction. Further, the governing body may delegate this authority to local law enforcement agencies.
QUESTION 4. a: Are Colorado Department of Transportation (CDOT) personnel, and other parties assisting law enforcement officers in the removal of vehicles and cargo from the highway right-of-way, immune from liability for damage to said motor vehicles and/or the cargo if they are performing this duty at the request of a law enforcement officer?
QUESTION 4. b: If CDOT personnel or other parties provide assistance in clearing the highway right-of-way, will they be held liable for secondary property damage to the disabled motor vehicles (i.e., autos, trucks, etc.) and their contents incurred due to the removal of said obstruction? Will they be held liable for performing this duty, if they knew that damage would likely occur when the vehicle and/or its cargo are removed?
Discussion: Section 42-4-1603, C.R.S. (1993) provides absolute immunity to CDOT personnel removing motorvehicles at the direction of the listed law enforcement officers. Thus, CDOT personnel will not be held liable for secondary property damage to motor vehicles, if CDOT personnel are removing the motor vehicles at the direction of the law enforcement officers listed in §42-4-1603, C.R.S. (1993). CDOT personnel are not protected by § 42-4-1603, C.R.S. (1993) while removing vehicles, cargo, and debris.
CDOT personnel acting within the scope of their employment are, however, protected from personal liability, unless they act with willful and wanton disregard for the property rights of others, §§ 24-10-101 et seq., C.R.S. (1988 1993 Supp.). Pursuant to the Colorado Governmental Immunity Act, CDOT is liable for the existence of a dangerous condition of a public highway, road, or street which interferes with the movement of traffic. § 24-10-106(1)(d), C.R.S. (1988). If highway debris created a dangerous condition in a public highway, it would be within an employee's scope of employment to remove the motor vehicle, vehicle, cargo or debris from the highway. The employee, therefore, would not be personally liable, unless a court found that they acted with willful and wanton disregard for the property rights of others.
The Colorado Court of Appeals, in Ungerer v. Moody,859 P.2d 251 (Colo.App. 1993), cert. granted, No. 93-SC236 (Oct. 4, 1993), specifically adopted the standard of "willful and wanton" contained in the exemplary damages statute, § 13-21-102(1)(b) C.R.S. (1987). The statute provides that willful and wanton conduct "means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff."[5]
 SUMMARY: If acting at the direction of the law enforcement officers enumerated in § 42-4-1603, C.R.S. (1993), CDOT and its employees are absolutely immune from liability while removing motor vehicles from the highway right-of-way. Further, CDOT employees could be liable for damage caused only while acting outside the scope of employment or with willful and wanton disregard for the property rights of others. See Question 1 and 2 for further discussion of the immunity provided by § 42-4-1603, C.R.S. (1993).
SUMMARY
The Colorado State Patrol has statutory authority to remove motor vehicles from state highways and has statutory authority to remove vehicles, cargo, and debris from state highways, if the removal is necessary to effectively regulate traffic. Municipalities have statutory authority to authorize municipal law enforcement officials to remove motor vehicles, trailers, cargo, and debris from roadways within the municipalities' jurisdiction. CDOT and its employees are absolutely immune from liability while removing motor vehicles from state highways at the direction of the law enforcement officials enumerated in § 42-4-1603, C.R.S. (1993). CDOT personnel are protected by the Colorado Governmental Immunity Act while removing trailers, cargo, and debris, unless their actions are willful and wanton or outside the scope of their employment. Sections 24-10-101 etseq., C.R.S. (1988 1993 Supp.).
 GALE A. NORTON Attorney General
 MICHAEL KING Assistant Attorney General
SOVEREIGN IMMUNITY HIGHWAYS TRAFFIC TORTS
§ 42-4-1601 through 1603, C.R.S. (1993) § 24-33.5-212, C.R.S. (1988) § 24-33.5-212(1)(f), C.R.S. (1988) § 31-15-702(1)(a)(I), C.R.S. (1986) § 42-1-102(46), C.R.S. (1993) § 42-4-1603, C.R.S. (1986) § 42-4-1603(2), C.R.S. (1993) § 24-10-106(1)(d), C.R.S. (1988) § 42-1-102(88), C.R.S. (1993) § 24-10-101 et seq., C.R.S. (1988 1993 Supp.) § 31-15-702(1)(a)(I), C.R.S. (1986) § 30-15-401(h), C.R.S. (1986) § 2-4-101, C.R.S. (1980) § 42-1-102(81), C.R.S. (1993) § 31-15-702(I)(a)(I), C.R.S. (1986) § 24-10-106, C.R.S. (1988 1993) § 24-10-106, C.R.S. (1988 1993)
TRANSPORTATION, DEPT. OF
This is an opinion analyzing the potential liability for CDOT and its employees while removing motor vehicles, cargo, and debris from state highways.
[1] Although the question asks if the officer may remove the motor vehicle when it is deemed a hazard to motorists, the proper test is whether the motor vehicle constitutes "an obstruction to traffic or proper highway maintenance."
[2] This opinion is not intended to and does not address removal of motor vehicles containing hazardous substances, or incidents involving spills of hazardous substances. This opinion is based upon the presumption that the cargo and debris are non-hazardous substances.
[3] "Trailer" is defined as:
 "Trailer" means any wheeled vehicle, without motive power and having an empty weight of more than two thousand pounds, which is designed to be drawn by a motor vehicle and to carry its cargo load wholly upon its own structure and which is generally and commonly used to carry and transport property over the public highways.
Section 42-1-102(81), C.R.S. (1993). Thus, a trailer is a vehicle, not a motor vehicle.
[4] For example, the Denver Code provides "[T]he manager of public works is authorized to order any article, vehicle or thing whatsoever encumbering any street, alley, sidewalk, parking or other public way or place to be removed." Denver, Colo., Code | 49-246 (1950).
[5] The exemplary damages statute was amended in 1986 to include a definition of willful and wanton. The Colorado Supreme Court has not had an opportunity to apply this definition to the Governmental Immunity Act. Prior to the 1986 amendment, the Colorado Supreme Court ruled that "wanton and reckless disregard" required the defendant, "while conscious of his conduct and cognizant of existing conditions, knew, or should have known, that the injury would probably result from his acts." Frickv. Abell, 602 P.2d 852, 854 (Colo. 1979). TheFrick standard provides less protection to CDOT employees, and would apply to willful and wanton lawsuits, if the Supreme Court refuses to extend the exemplary damages statute's willful and wanton definition.